Anthony SPANO, Plaintiff-Appellant,

v.

N. V. KONINKLIJKE ROTTERDAMSCHE LLOYD, Defendant and Third Party Plaintiff-Appellee,

v.

UNIVERSAL TERMINAL & STEVEDORING CORP., Third Party Defendant.

No. 203, Docket 72-1154.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1972.

Decided Jan. 8, 1973.

Martin Lassoff, New York City (Zimmerman & Zimmerman, New York City, on the brief), for plaintiff-appellant.

William M. Kimball, New York City (Burlingham, Underwood & Lord and John G. Ingram, New York City, on the brief), for defendant and third party plaintiff-appellee.

Before KAUFMAN, ANDERSON and OAKES, Circuit Judges.

PER CURIAM:

Anthony Spano, employed as a longshoreman by the Universal Terminal and Stevedoring Corporation, was injured on September 6, 1968, while working aboard the defendant's vessel, the S.S. AMPENAN, when he allegedly tripped over a wire, lashing barrels of deck cargo to a pad eye near a hatch coaming.

He brought this diversity action against the shipowner for negligence and unseaworthiness. The case was tried to a jury which found, in a special verdict, that the shipowner was neither negligent nor the vessel unseaworthy because of the presence of the lashing wire.

The appellant now points to twelve items of alleged error in the jury instructions; however, he made no objection below to nine of these claims and none of them is of such a fundamental or exceptional nature as to constitute clear error and thus escape the requirement of F.R.Civ.P. 51 that parties may assign as error only those instructions which are objected to before the jury retires, United States v. Heyward-Robinson Co., 430 F.2d 1077, 1083–1085 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); Nielsen v. Charles Kurz & Co., 295 F.2d 692 (2 Cir. 1961), cert. denied, 369 U.S.

876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962); Troupe v. Chicago, D. & G. Bay Transit Co., 234 F.2d 253, 259–260 (2 Cir. 1956).

■ Spano did object to the portion of the charge which stated that the shipowner would not be liable for negligence unless he failed to warn the plaintiff or failed to take steps to correct the allegedly dangerous condition, i. e., the presence of the lashing wire. Even if there were error in this portion of the charge, however, it did not affect the substantial rights of the appellant, F.R.Civ.P. 61. The court correctly charged that the shipowner would be liable for unseaworthiness if the presence of the wire created a condition which made the ship not reasonably fit for use by the plaintiff. In the light of the jury's finding, by special verdict, that there was no unseaworthiness, that is, there was nothing in the condition of the ship which could render the owner liable, it is clear that the jury never needed to reach the question of whether or not the owner failed in a duty to warn or correct.[1]

■ The appellant, although unable to give any reasons for his claim, also objected to the portion of the charge which stated that the shipowner was not responsible for the negligence of longshoremen unless such negligence created an unseaworthy condition. Because the owner is not responsible for the stevedoring operation or the actions of the longshoremen, these instructions correctly stated the law, Guarracino v. Luckenbach Steamship Co., 333 F.2d 646, 648 (2 Cir.), cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964); Puddu v. Royal Netherlands Steamship Co., 303 F.2d 752, 753 (2 Cir.), cert. denied, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1962).

During the trial, the ship's log was introduced into evidence. It included a statement that Third Mate Klop had seen the plaintiff lying on the deck shortly after the accident, but it contained no description of the cause of the accident. In a separate statement, also in evidence, Klop had said that he had heard that Spano tripped over a wire. In summation, plaintiff's counsel argued that the failure of the log to state a cause of the accident was an "absolute unmitigated total fabrication" and that the alleged inconsistency between the log book and the separate statement was "fraudulent."

■■ During his charge, the judge cautioned the jury to consider certain things, including the fact that Klop's native tongue was Dutch, before deciding whether or not the claimed inconsistencies did in fact impeach Klop's trial testimony. In the federal system, the trial judge has the power to comment on the evidence, Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); United States v. Rosenberg, 195 F.2d 583, 594 (2 Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952), and in this case his instructions were proper in the light of plaintiff's summation.

■ The appellant also makes the general complaint that the trial judge's questioning of witnesses and his rulings on motions during the trial showed bias in favor of the defendant and prevented a fair trial, but a review of the record shows that this claim has no merit. Glasser v. United States, 315 U.S. 60, 82–83, 62 S.Ct. 457, 86 L.Ed. 680 (1942); DiBello v. Rederi A/B Svenska Lloyd, 371 F.2d 559 (2 Cir. 1967); United States v. De Fillo, 257 F.2d 835, 839 (2 Cir. 1958), cert. denied, 359 U.S. 915,

---

1. Any difficulty on this point and others directed to the charge could have been avoided if counsel had not insisted on alleging both negligence and unseaworthiness. It is hard to imagine, especially on the facts of this case, how an owner could be negligent, if the ship was not unseaworthy, see G. Gilmore & C. Black, The Law of Admiralty 364 (1957). It should be noted, however, that effective November 26, 1972, employees, such as the appellant here, covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq., may no longer bring an action against the vessel or its owner for unseaworthiness, Pub.Law 92–576, § 18.

79 S.Ct. 591, 3 L.Ed.2d 577 (1959); *see also,* United States v. Pellegrino, 470 F.2d 1205 (2 Cir. 1972); United States v. McCarthy, 473 F.2d 300 (2 Cir. 1972).

The judgment is affirmed.