Jackson O. KING, Plaintiff,

v.

DEUTSCHE–DAMPFS–GES., Defendant and Third-Party Plaintiff,

v.

INTERNATIONAL TERMINAL OPERATING CO., INC., and Court Carpentry & Marine Contracting Co., Third-Party Defendants.

No. 68 CIV. 3374.

United States District Court, S. D. New York.

June 18, 1974.

Sergi & Fetell, Brooklyn, N.Y., Solomon J. Cohen, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by Thomas F. Molanphy, New York City, for defendant and third-party plaintiff.

## Memorandum Opinion and Order

MOTLEY, District Judge.

Plaintiff, a marine carpenter, brought this diversity action against defendant shipowner on negligence and unseaworthiness theories. The case was tried to a jury on October 31 and November 1, 1973 and the jury, in accordance with its special verdict (Court's Exhibit 1), found that plaintiff had sustained damages in the amount of $30,000. The jury reduced those damages by 50%, for contributory negligence, and awarded plaintiff $15,000.[1]

Plaintiff moves under Rule 59(e), Fed.R.Civ.P., to set aside that portion of the jury's verdict finding him contributorily negligent and, accordingly, to amend the judgment to award him $30,000.

Defendant moves under Rule 50, for judgment in its favor notwithstanding the verdict. In the alternative it moves under Rule 59 for a new trial on the issue of negligence.

Plaintiff claimed on the trial that, on June 18, 1968, while in the employ of Court Carpentry and Marine Contracting Co., he was working aboard the defendant's vessel as a marine carpenter or lasher. Plaintiff's employer had been hired by defendant to do carpentry work. A stevedoring company, International Terminal Operating Company (ITO) had been employed by the vessel owner to stow steel beams on the 'tween deck of the vessel.

It was plaintiff's job to tie or lash other cargo which had been stowed on the steel beams by ITO to those steel beams.

There was no dispute that plaintiff was required to walk on the beams in order to perform this task.

Plaintiff sought to recover damages which he allegedly sustained to his left knee when he stepped into a space which had been left between the beams. He claimed that the manner in which the beams were stowed, that is, the leaving of a space wide enough for a foot to go through, rendered the vessel unfit. Plaintiff further claimed that the vessel owner was liable for the negligent acts of the stevedoring company and plaintiff's employer, the carpentry company, and, in the alternative, that the vessel owner negligently failed to carefully inspect the stevedore's work.

Defendant, on the other hand, contended that plaintiff was contributorily negligent by failing to watch where he was walking.

The jury found that defendant was negligent, that its negligence was the proximate cause of the accident and that plaintiff was contributorily negligent. The jury, however, found that plaintiff had not sustained his burden of proving that the vessel was unseaworthy.

Defendant now moves for judgment n. o. v., or, in the alternative, for a new trial on the grounds that 1) plaintiff was not entitled to a charge under the Jones Act, as he was not a member of the crew or an employee of the defendant, 2) there was insufficient evidence of negligence on the part of the vessel owner, and 3) the jury should not have been instructed that the vessel owner could be held liable for the negligent acts of the stevedore and carpentry companies.

## Negligence

The court agrees with defendant's contention that plaintiff was not entitled to recover under the Jones Act. The Jones Act applies only between employers and employees and there was no showing that the vessel owner was an employer for purposes of the Jones Act. *Mahramas v. American Export Isbrandt-*

---

[1]. The third party action by the vessel owner against the stevedore and carpentry company, plaintiff's employer, was severed.

*sen Lines, Inc.*, 475 F.2d 165 (2d Cir. 1973).

■ However, since this is a diversity action, New York law governs and an employment relationship is obviously not required under state negligence law. Since, apart from the requirement of an employment relationship, the standards for finding liability under common law negligence are essentially the same as those which the court described in its Jones Act charge, *cf. Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), defendant was not prejudiced.

■■ The court, however, must conclude that there was insufficient evidence to support the jury's finding that the vessel owner was negligent. A shipowner is negligent only if its agents had actual or constructive notice of a dangerous condition. *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1319, (2d Cir. 1973). In the instant case, there was no evidence that members of the ship's crew knew of the dangerous condition or that the condition had been present long enough that the crew could be charged with notice.[2] Moreover, plaintiff, himself, testified, in connection with the contributory negligence defense, that he did not see the space until he actually stepped into it. (Tr., Oct. 31, 1973, p. 41.)[3] Therefore, the jury did not have sufficient evidence from which it could conclude that the allegedly dangerous condition was present long enough or was obvious enough that the ship's crew should have noticed it.

■ The jury's finding may have been based on a belief that the defendant shipowner had an affirmative duty to inspect the work of the stevedore before permitting the longshoremen to work in the cargo area and that such an inspection would have resulted in the discovery of the allegedly dangerous condition. This was one of plaintiff's theories (Tr., Nov. 1, 1973, p. 154) and the court so informed the jury in its charge. However, there is no such duty on the part of the shipowner to inspect the stevedore's work, at least unless the shipowner should know that there is a dangerous condition which ought to be corrected.

Defendant also challenges the court's instruction with regard to defendant's liability for negligent acts of the stevedore. The court charged the jury as follows:

"In this case there is no dispute that the vessel-owner here had employed two agents to work aboard the ship, that is the stevedoring company and the plaintiff's employer, the Carpentry Company.

The vessel-owner in this case is responsible for the negligence of any of its agents or employees committed in the scope of their employment." (Tr., Nov. 1, 1973, p. 224.)

■ The charge was erroneous. The shipowner is not responsible for the negligence of longshoremen unless such negligence created an unseaworthy condition. *Spano v. Kroninklijke Rotterdamsche Lloyd*, 472 F.2d 33, 35 (2d Cir. 1973). The court assumes that if the stevedore's negligence did produce an unseaworthy condition, the shipowner would still not be liable in negligence, although the vessel would, of course, be liable for unseaworthiness.

The jury may have assumed that, either the stevedore or the carpentry company must have had knowledge of the open space and, therefore, was negligent, and that defendant shipowner would be held responsible for this negligence.

2. Indeed, Bob Pinto, the hatch foreman employed by the stevedore, International Terminal Operating Co., testified on his deposition that he believed the stowage of the beams had been completed shortly after 11:00 A.M. (Def's Exh.C, p. 16.) According to plaintiff's deposition, the accident likewise occurred at approximately 11:00 A.M. (Def's Exh.A, p. 12.)

3. See also testimony of Grover Perry, transcript, Oct. 31, 1973, p. 106.

### Unseaworthiness

As already noted, the jury found for plaintiff on the issue of negligence but found for defendant on the issue of unseaworthiness. Although plaintiff moved for a directed verdict on the issue of unseaworthiness at the close of defendant's case, he has not moved for a judgment notwithstanding the verdict on that issue.

However, the court has decided, on its own motion, after having given the parties notice and an opportunity to be heard, Rule 59(d), Fed.R.Civ.P., that a new trial should be ordered on unseaworthiness.

While the court cannot conclude that the jury was required to find unseaworthiness or that its finding was against the weight of the evidence, "[i]t is hard to imagine, especially on the facts of this case, how an owner could be negligent, if the ship was not unseaworthy . . . ." *Spano, supra,* 472 F.2d at 35 n. 1.

■■ Although juries are ordinarily permitted to return inconsistent verdicts, it seems likely in this case that the jury, having found defendant liable for negligence, concluded that it was not necessary to find defendant liable for the unseaworthiness of its vessel, or even to consider the issue at all, in order to afford plaintiff the recovery to which it concluded he was entitled.

Since it is likely that plaintiff's unseaworthiness claim never received a full hearing, the court concludes that there should be a new trial on his unseaworthiness claim.

Unless the parties waive their right to a jury trial in writing no later than June 26, 1974, the unseaworthiness claim will be tried to a jury.[4] In the event that a jury trial is waived, the court will decide the unseaworthiness and damages issues on the basis of the record of the previous trial. The parties would, however, be afforded an opportunity to offer additional, relevant evidence.

In view of the court's disposition of the negligence claim, plaintiff's motion to set aside the finding of contributory negligence is denied.

So ordered.

---

4. Both the negligence and unseaworthiness claims, which arise under New York law, were brought on the "law" side of the court.