**EAGLE AMERICAN INSURANCE COMPANY, Appellee,**

v.

**FRENCHO, Appellant, et al.**

[Cite as *Eagle Am. Ins. Co. v. Frencho* (1996), 111 Ohio App.3d 213.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1447.

Decided May 23, 1996.

*Ulmer & Berne* and *Edwin J. Hollern,* for appellee.

*Luper, Sheriff & Neidenthal Co., L.P.A., Frederick M. Luper, Jack L. Stewart* and *Brigid E. Heid,* for appellant.

REILLY, Judge.

This matter is before this court upon the appeal of Candise Frencho, appellant, from the October 19, 1995 judgment entry of the Franklin County Court of Common Pleas, which granted the motion of Eagle American Insurance Company ("Eagle American"), appellee, for a new trial and denied appellant's motion for prejudgment interest. Appellant also appealed the judgment entry of the trial court entered on June 6, 1995, which granted Eagle American's motion for summary judgment on appellant's bad faith claim. Appellant's initial appeal of this judgment was dismissed by this court as premature on July 18, 1995.

Appellant sets forth the following assignments of error on appeal:

"I. The trial court abused its discretion in granting a new trial where the verdict is supported by substantial, credible evidence.

"II. The trial court erred in granting a new trial where the award was not so excessive as to have been the result of passion or prejudice.

"III. The trial court committed reversible error by granting a new trial on the grounds that it failed to instruct the jury to reduce future damages to present value.

"IV. The trial court erred as a matter of law in denying Candise Frencho's motion for prejudgment interest.

"V. The trial court erred in granting summary judgment in favor of Eagle American on the Frenchos' bad faith claim."

The underlying facts of this case are undisputed. Appellant was involved in an automobile accident with an underinsured motorist on May 8, 1990. Appellant was seriously injured and taken to the hospital, where it was determined that she had fractured three ribs, had a contusion to her head, and had broken two of the metacarpal bones in her dominant hand. The metacarpal bones are the long bones which extend between the wrist and the knuckle on the hand. Appellant's index finger's metacarpal bone had been severely broken and her middle finger's metacarpal bone had essentially exploded on impact.

Dr. Schlonsky operated on appellant's hand and utilized a series of metal screws and plates to hold the pieces of bone in place during the healing process. Appellant began a rigorous physical therapy routine following her surgery. Despite the surgery and the physical therapy, appellant's recovery did not proceed as well as her doctor had anticipated. Appellant developed stiffness in her hand caused by the build-up of scar tissue between the tendons and the metacarpal bones. The scar tissue, called adhesions, had attached the tendons to the bones. This prevented appellant from having free movement of her hand and caused her pain.

At that time, Dr. Schlonsky referred appellant to Dr. Lubbers. On October 23, 1990, Dr. Lubbers performed a second surgery on appellant called a capsulectomy. This surgery involved the slicing open of appellant's knuckles, the cutting away of the tight band of scar tissue which had formed between the tendons and the bones, and the use of a metal hook to pull the tendons free from where they had attached to the bone. Appellant completed another course of physical therapy in an effort to keep down the swelling and to maintain the degree of flexibility which Dr. Lubbers had been able to achieve as a result of the surgery.

Despite the surgery and appellant's commitment to her physical therapy program, within one month after the second surgery, appellant's joints had already tightened due to the formation of scar tissue. This caused appellant pain. On November 21, 1990, Dr. Lubbers injected a cortisone substance into each of appellant's knuckles to lessen the pain.

In June 1992, appellant was still having chronic pain in her hand. According to her testimony, she had a certain degree of pain in her left hand at all times and this pain would increase when she attempted any task with her hand. Dr. Lubbers gave her another series of cortisone shots in her knuckles to alleviate the pain and scheduled her for a third surgery to attempt to loosen the tendons, remove the scar tissue and to remove the metal plate, which still remained in her hand. Dr. Lubbers performed this surgery on December 8, 1992. Thereafter, appellant participated in more physical therapy.

On March 3, 1993, Dr. Lubbers prescribed Lodine to help alleviate appellant's pain. Lodine is an anti-inflammatory drug which is similar to cortisone. It helps decrease the inflammatory response and helps reduce the pain and swelling associated with the healing process following an injury.

Although appellant continued to have a certain amount of pain, Dr. Lubbers informed her that further surgery was inadvisable and that she was going to have pain for the rest of her life. On December 15, 1993, Dr. Lubbers noted that appellant had signs of reflex sympathetic dystrophy, which is a nervous response to increased pain. In 1994, appellant returned to Dr. Lubbers for a third set of cortisone shots, and she returned to physical therapy until August 24, 1994.

During this time, appellant also had some pain in her chest. Dr. Lubbers referred her to Dr. Hashmi, who diagnosed costochondritis, which is an inflammation of the cartilage around the ribs. Dr. Hashmi injected cortisone into appellant's sternum.

At the time of the accident, Eagle American insured appellant and her husband with underinsured-motorist insurance with combined single limits in the amount of $300,000. Appellant demanded that Eagle American pay the limits of her policy; however, despite negotiations, Eagle American and appellant did not reach an agreement as to how much Eagle American would pay. The parties arbitrated the amount of monetary damages pursuant to the terms of the insurance policy.

On March 7, 1994, the arbitration panel awarded appellant $300,000, and Eagle American timely appealed to the Franklin County Court of Common Pleas, requesting that a jury determine the amount of damages due for pain and suffering. Pursuant to the terms of the insurance contract, either party would have been entitled to appeal the arbitration award to the court of common pleas.

Once the matter was filed in the common pleas court, appellant filed an answer and counterclaim alleging a bad faith claim against Eagle American. The basis of her claim was that Eagle American had acted in bad faith in failing to settle her claim. Eagle American filed a motion for partial summary judgment on appellant's bad faith claim. Eagle American's motion for partial summary judgment on appellant's bad faith claim was granted.

The matter proceeded to trial before a jury, which rendered its verdict in favor of appellant in the amount of $450,000. Thereafter, Eagle American filed motions for a new trial, for remittitur, and for judgment notwithstanding the verdict, while appellant filed a motion for prejudgment interest. In the entry dated October 19, 1995, the trial court granted the motion for a new trial filed by Eagle American and overruled Eagle American's motions for remittitur and for judg-

ment notwithstanding the verdict. The trial court also overruled appellant's motion for prejudgment interest.

Appellant's first, second, and third assignments of error are interrelated and will be addressed together. Appellant argues that the trial court erred and abused its discretion in granting a new trial where the verdict was supported by substantial, credible evidence, where the award was not so excessive as to have been the result of passion or prejudice, and because the trial court's failure to instruct the jury to reduce future damages to present value was not plain error.

Civ.R. 59(A) provides as follows:

"Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

"(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

"(7) The judgment is contrary to law;

" * * *

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

"In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."

In *Commodore–Voss v. Shoemaker* (Sept. 5, 1995), Franklin App. No. 95APE02–206, unreported, 1995 WL 527771, this court adopted the rationale of the trial court in *Bland v. Graves* (1993), 85 Ohio App.3d 644, 620 N.E.2d 920, wherein the Summit County Court of Appeals described the process of determining the appropriateness of the granting of a motion for new trial as follows:

"In deciding whether to grant a new trial the judge has often been referred to as the thirteenth juror. * * * While this does not mean that the judge may substitute his own judgment for that of the trier of fact, it does require the judge to 'view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.'" *Id.* at 651, 620 N.E.2d at 924.

This rule provides that the trial court may grant a new trial if one of the specifically enumerated grounds exists or if good cause is shown. The rule does not require that the trial court grant a new trial, but, rather, the rule allows the court discretion to grant or not to grant a new trial. Granting a new trial on one of the bases enumerated in Civ.R. 59 rests in the sound discretion of the trial court, and a reviewing court will not disturb a ruling unless there is an abuse of discretion. *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 184, 7 OBR 229, 231, 454 N.E.2d 976, 979–980. In *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, the Ohio Supreme Court stated as follows at paragraph two of the syllabus:

"The meaning of the term 'abuse of discretion' in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court."

Further, this court stated, in *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 44, 25 OBR 115, 117, 495 N.E.2d 462, "In the absence of prejudice neither this court nor the trial court can substitute its judgment for that of the jury in the area of damages in a personal injury case."

■ The trial court granted Eagle American's motion for a new trial for the following reasons: (1) the court's failure to instruct the jury on the reduction of future damages to present value constituted plain error affecting the fairness and integrity of the judicial process and resulting in an excessively large verdict; and (2) certain portions of appellant's counsel's closing arguments very likely prejudiced and impassioned the jury and caused them to render an excessively high verdict. Because the jury was not instructed to designate which portion of the verdict was attributed to future damages, the trial court was unable to ascertain how much the jury awarded as future damages. However, the trial court was certain that a good portion of the jury award consisted of future damages. Furthermore, the trial court concluded that if the jury had not, in fact, awarded any sums for future damages, then, as a matter of law, the award was excessive. Because the trial judge has wide discretion in this area, and because the trial judge was in the best position to view the evidence, the jury, and the impact of the evidence and arguments on the jury, this court will not disturb the trial judge's judgment on appeal.

The trial court succinctly set forth the general law in Ohio with regard to reduction of an award for future damages to present value. The trial court stated as follows:

"In determining the amount of future damages, the jury should take into consideration the earning power of money and the amount awarded for future

damages 'should be reduced to its present value as a lump sum payable at the time of the verdict.' *Maus v. New York, Chicago & St. Louis Rd. Co.* (1956), 165 Ohio St. 281 [59 O.O. 366, 135 N.E.2d 253], paragraph one of syllabus. The Supreme Court of Ohio stated that '[i]t is settled that reduction to present value lies within the province of the jury.' [Citation omitted.] *Sahrbacker v. Lucerne* [*Products, Inc.*] (1990), 52 Ohio St.3d 179 [556 N.E.2d 497]. Further, future damages must be reduced to present value as a matter of law, otherwise they are excessive. See *Chesapeake & Ohio Railway Company v. Kelly* (1916), 241 U.S. ·485 [36 S.Ct. 630, 60 L.Ed. 1117]; *Galayda v. Lake Hospital Systems, Inc.* (1994), 71 Ohio St.3d 421 [644 N.E.2d 298], *citing, Maus, supra; Rodgers v. Fisher Body Division, General Motors Corp.* (6th Cir.1984), 739 F.2d 1102; and *Molecular Technology Corporation v. Valentine* (6th Cir.1991), 925 F.2d 910. Due to the foregoing, failure to.instruct the jury on reduction of future damages to present value is plain error, which affects the fairness and integrity of the judicial process because the error would cause an excessively large verdict. *Rodgers, supra,* at pp. 1106–07. See also *Molecular Technology, supra,* and *Atkinson v. Archer* (November 29, 1994), Franklin App. No. 94APE03–416, unreported [1994 WL 672875].

"In *Galayda, supra* [71 Ohio St.3d at 425, 644 N.E.2d at 301], the Supreme Court of Ohio also stated that:

" 'Under the common law of Ohio, future damages must be reduced to present value, and a defendant is entitled to a jury instruction to that effect. [Citation omitted.] Thus in Ohio, a jury is *to return a verdict not in an amount reflecting the actual damages it deems to be reasonably certain to occur in the future, but rather in a reduced amount representing the present value of those actual damages.*'

"Based upon the law in Ohio regarding the required reduction of future damages to present value, this Court finds [Eagle American's] arguments on this point to be well-taken."

Appellant is correct in arguing that a party whose request for jury instructions fails to include the correct law governing a particular issue and who otherwise fail to comply with Civ.R. 51(A) waives his right to question the trial court's charge on appeal. However, that does not change the fact that the trial court's failure to instruct the jury on future damages was incorrect as a matter of law. Therefore, the plain error doctrine does apply in the present case, and the trial court did not abuse its discretion in ordering a new trial.

The trial court also found that some of counsel's statements during closing arguments served to prejudice the jury. The trial judge was in a much better position to view the evidence and the effects of the evidence and the arguments

upon the jury and the jury's ultimate award. Thus, this court finds that the trial court did not abuse its discretion in determining that counsel's arguments, as they were phrased, served to improperly prejudice the jury.

Appellant also argues strongly that the jury's award was not against the manifest weight of the evidence. Appellant stresses that she has had chronic pain in her hand every day since she was injured in the automobile accident on May 8, 1990. According to appellant's testimony, the level of pain with which she lives on a daily basis would rate a three on a scale of one to ten and, when she uses her hand for certain activities, her level of pain would rate a five on the same scale of one to ten. Appellant has endured hours of rigorous physical therapy which, in and of itself, has been extremely painful. Appellant has endured three separate surgeries on her hand and numerous cortisone injections in her knuckles. Appellant is unable to pursue life as vigorously as she did in the past, both because of her pain and because of her fear of more pain. Appellant's condition is not likely to improve in the future.

Appellant contends that the above evidence is sufficient to support the award even without any amount reflecting further damages. Appellant's argument neglects one point: pain is entirely subjective. This court does not doubt that appellant has pain and will have pain for the rest of her life; however, this court also agrees with the trial court that some portion, and perhaps a significant portion, of the jury's award was for future damages. By law, those future damages must be reduced to present value. Unfortunately, it is appellant who must suffer from (1) the failure of counsel to present evidence so that the jury could reduce any future damages to present value and the failure of counsel to request that the trial court instruct the jury to reduce future damages to present value, and (2) the failure of counsel to provide interrogatories to the jury to determine what amount of their award was for future damages. The amount of damages payable to appellant to compensate her for pain and suffering is to be decided by a jury. The trial court did not abuse its discretion in granting the motion of Eagle American for a new trial. Appellant's first, second, and third assignments of error are not well taken and are overruled.

In the fourth assignment of error, appellant argues that the trial court erred in denying her motion for prejudgment interest. Preliminarily, this court notes that the trial court correctly determined that this matter is governed by R.C. 1343.03(A), rather than R.C. 1343.03(C), as appellant had argued. R.C. 1343.03(C) provides that interest on a judgment rendered in a civil action based on tortious conduct shall be calculated from the date the action accrued, but only if the court finds that the party owing the judgment failed to make a good faith effort to settle the case. By comparison, R.C. 1343.03(A) provides for interest on money which becomes due and payable upon any instrument of writing, including

an insurance contract. See *Petrie v. Nationwide Mut. Ins. Co.* (Dec. 29, 1994), Franklin App. No. 94APE06–805, unreported, 1994 WL 723487. In order to be entitled to prejudgment interest, Section (A) does not require a showing of the nonmovant's failure to make a good faith effort to settle.

After determining that R.C. 1343.03(A) applied to the present case, the trial court reviewed the Supreme Court case of *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687, which held that prejudgment interest was appropriate even in a breach-of-contract case if the "due and payable" test is satisfied. The Supreme Court reasoned that prejudgment interest does not constitute a penalty; instead, prejudgment interest is compensation for the period of time between accrual of the claim and judgment, regardless of whether the sum was capable of being ascertained only at the time of judgment by the court. *Id.* at 116–117, 652 N.E.2d at 691–692. The court noted that the question should not be whether the amount was liquidated, unliquidated or capable of ascertainment; instead, the question should be whether the aggrieved party has been fully compensated. *Id.*

Based on the above, the trial court set out to determine whether appellant was entitled to prejudgment interest pursuant to R.C. 1343.03(A) and the holding in *Royal*. The trial court determined that, by the terms of the insurance contract itself, the money did not become "due and payable" until the jury verdict was rendered. The court reasoned that, pursuant to the terms of the insurance contract, in the event that the parties were unable to agree as to the amount of damages, both parties had a right to proceed to binding arbitration. In the event that either party was unsatisfied with the result rendered after the arbitration proceeding, both parties had a subsequent right to a trial by jury. Therefore, the trial court reasoned that the money became due and payable when the jury rendered its verdict and judgment was entered. Thus, interest would be calculated only from the date the judgment was rendered, which would preclude an award of prejudgment interest.

Appellant argues that, if the tortfeasor who caused the automobile accident which injured appellant had been fully insured, as opposed to being an underinsured motorist, he would have been obligated to pay interest to her from the date of her injury. Because the legislative purpose of mandatory uninsured/underinsured-motorist coverage is to provide compensation to persons injured by uninsured/underinsured motorists, appellant argues that Eagle American should pay to her what the tortfeasor would have had to pay.

Appellant's argument fails for the following reasons. In the event that the tortfeasor had had adequate insurance coverage, both appellant and the tortfeasor's insurance company would have had certain rights. Before the tortfeasor's insurance company would have been obligated to make any payment on appel-

lant's behalf, the parties would have had to have agreed that a certain sum was due. Obviously, with regard to medical damages, appellant would have presented her medical bills. However, as to the award for pain and suffering, there is no case law to establish that the tortfeasor's insurance company would have had to pay prejudgment interest in the event that the tortfeasor's insurance company was justified in not paying the full amount demanded by appellant without proceeding to trial or some other method to resolve their dispute. Furthermore, even if this court were to agree with appellant that R.C. 1343.03(C) applies and that Eagle American should stand in the same position that the tortfeasor's insurance company would have stood in, appellant still would have had to demonstrate bad faith on the part of Eagle American in failing to settle this award. Because this court agrees with the trial court's decision to grant partial summary judgment in favor of Eagle American on appellant's bad faith claim, as will be addressed in this court's discussion of appellant's fifth assignment of error, appellant's argument fails.

Appellant's fourth assignment of error is not well taken and is overruled.

■ In her fifth assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of Eagle American on appellant's bad faith claim.

Summary judgment under Civ.R. 56(C) is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving all doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. See *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615.

Pursuant to Civ.R. 56(C), summary judgment may be rendered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment may not be rendered unless it appears that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom this motion is made.

The moving party has the burden of showing that there is no genuine issue as to any material fact as to the critical issues. The opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C), to show there is a genuine issue at trial. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

The trial court found that Eagle American did offer to pay the claim in an amount which covered medical bills of $30,000, plus $120,000 for pain and suffering based upon a ten percent permanent impairment, which included future

pain. Thus, Eagle American did not refuse to pay the claim; instead, Eagle American refused to pay the amount requested by appellant. The trial court found that the dispute between the parties was as to the value of the pain and suffering and not whether or not the claim should be paid.

The trial court also concluded that appellant failed to provide evidence to establish that the amount offered, $150,000, was not reasonably justified. Appellant argued that her pain and suffering turned out to be more extreme than had initially been expected. On this point, the trial court noted that the only evidence submitted which would indicate that appellant's level of pain and suffering was greater than what could be gleaned from the medical reports was provided through the affidavit of her attorney rather than through an affidavit made by herself. The court correctly determined that this constitutes inadmissible hearsay which did not support appellant's bad faith claim.

As this court stated previously, pain is individually subjective. Eagle American's claims representative was deposed and stated that he based the offer on the medical reports of both appellant's doctor and Eagle American's doctor, written correspondence with Eagle American's doctor who clarified the impairment ratings, research on jury verdict awards, and comparisons with previous cases. Based upon a review of all of the evidence, this court finds that the trial court properly granted pretrial summary judgment in favor of Eagle American on appellant's bad faith claim. Appellant did not establish that Eagle American was unjustified in making its offer or that Eagle American had failed to properly investigate and evaluate her claim both prior to and after the arbitration.

Therefore, appellant's fifth assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PETREE, P.J., concurs.

DESHLER, J., concurs in part and dissents in part.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

DESHLER, Judge, concurring in part and dissenting in part.

While I agree with the majority insofar as a general affirmance of the trial court's granting of a new trial, I respectfully dissent from the majority's decision relating to the issue of prejudgment interest.

The majority appears to conclude either that R.C. 1343.03(A) controls appellant's rights to prejudgment interest (and not R.C. 1343.03[C]) or that as a consequence of the claim of appellant being one for underinsured coverage, the denial of appellant's bad faith claim precludes consideration of prejudgment interest.

The action here arises from a tort, the negligence of a motorist. The action is influenced procedurally by contract because of the underinsured coverage and the limits of liability as set forth in the contract of insurance. However, appellant's claim is for damages, and pending the claim and an ultimate determination of appellee's liability, there is an implicit requirement of a good faith effort to settle, pursuant to R.C. 1343.03(C). This duty is not simply incumbent upon an insurance company but is also required of a party seeking redress. The fact that plaintiff failed in a direct action for bad faith, however, does not preclude consideration of the claim for prejudgment interest. The actions are different in nature and are governed by different procedures. Bad faith is an independent civil action against a corporate defendant and governed by related insurance law. Prejudgment interest, at least the type contemplated by R.C. 1343.03(C), is an ancillary claim, without any existence on its own if unaccompanied by judgment arising from an action in tort. Thus, one could easily fail to have a meritorious bad faith claim against an insurance company but, depending upon the conduct of counsel pending litigation, have a fully cognizable claim for prejudgment interest under the statute if a judgment is obtained in the underlying tort case.

In this case, the appellant, upon securing a judgment, should not be precluded from a claim for prejudgment interest pursuant to R.C. 1343.03(C). This does not mean that the trial court should award the prejudgment interest, but only that it should consider the merits of the claim by the prevailing party. This case is not governed by *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687, and does not involve prejudgment interest associated with liquidated and unliquidated claims. Prejudgment interest, pursuant to R.C. 1343.03(C) is payable, if at all, upon an award by the trial court and is payable retroactively to the date the cause of action accrued. I would therefore reverse the trial court's decision denying consideration of prejudgment interest in this case.