OPINION *Page 2 
{¶ 1} Appellant Kelle R. McCabe filed a personal injury complaint in the Belmont County Court of Common Pleas following an automobile accident. The jury awarded her $6,653. She filed a motion for a new trial, which was overruled. On appeal, she contends that the trial court should have granted a new trial due to the inadequacy of the jury award. Appellant's argument is based primarily on the fact that she presented the only expert witness in the case, her chiropractor, and she asserts that the jury should have accepted her expert's unrebutted conclusions about her injuries and her damages. The record contains considerable evidence that calls into question some of her expert's conclusions, and therefore, Appellant is incorrect that her doctor's testimony was unrebutted. Appellant further contends that the trial court should have used her proposed verdict form that would have broken down the jury award into various component parts, such as lost wages, mental anguish, and future pain and suffering. The proposed verdict form did not conform to the requirement of Civ. R. 49(A), prescribing that a verdict must be a general verdict, and the trial court properly rejected it. The judgment of the trial court is affirmed.
 HISTORY OF THE CASE {¶ 2} At about 2:30 p.m. on April 1, 2004, Appellant was driving home from work on Rt. 40 in St. Clairsville, Ohio. She was 23 years old at the time. She was traveling at approximately 15 miles per hour, when the car in front of her suddenly stopped. It was raining at the time. Appellant quickly stopped, bumping into the car in front of her. Appellant was then hit from behind by a vehicle driven by Appellee Alex R. Sitar. The rear of Appellant's car suffered considerable damage from the *Page 3 
accident, but the car was still drivable. Appellant and Appellee drove to the police station to give statements about the accident, and then Appellant drove home. The police report indicated that Appellant had no injuries.
 {¶ 3} Late that evening, Appellant was taken to Wheeling Hospital in Wheeling, West Virginia. Appellant reported that she had neck and middle and high back pain. Various x-rays were taken, and she was diagnosed with muscle strains and ligament sprains. Appellant's mother is a massage therapist and runs a massage business in St. Clairsville, and she recommended that Kelle see Dr. Emil Nardone (at times referred to as Amir Nardone in the record). Dr. Nardone is a doctor of chiropractic medicine. On April 8, 2004, she began treatment with Dr. Nardone. She continued treating with Dr. Nardone until October of 2004. She also saw her family doctor, Dr. James Comerci, in May, 2004, to deal with her pre-existing and ongoing migraine and tension headaches, which became more severe after the accident. Appellant moved to Columbus, Ohio, in October of 2004. She there began treatment with Dr. Beau Lawyer, also a chiropractor.
 {¶ 4} On July 14, 2004, Appellant filed a personal injury complaint against Appellee in the Belmont County Court of Common Pleas. Trial was scheduled for April 11, 2006. Immediately prior to trial, Appellant submitted a proposed verdict form that contained nine separate questions regarding damages. The trial court rejected this verdict form as being in conflict with Civ. R. 49(A) and this Court's holding in Allison v.Daniels, 7th Dist. No. 01 CA 86, 2002-Ohio-5027. *Page 4 
 {¶ 5} Medical bills from the aforementioned doctors were submitted at trial. Appellant called four witnesses, including one expert witness, Dr. Nardone. Appellee called no witnesses. The jury rendered a general verdict in favor of Appellant in the amount of $6,653. The court entered judgment on June 2, 2006. Appellant filed a motion for a new trial on June 15, 2006, but it was denied on July 14, 2006. This timely appeal was filed on August 10, 2006.
 ASSIGNMENT OF ERROR NO. 1 {¶ 6} "THE TRIAL COURT ERRED IN OVERRULING THE PLAINTIFFS' [sic] MOTION FOR NEW TRIAL."
 {¶ 7} Appellant argues that a new trial may be granted when damages are inadequate or when the verdict is not sustained by the weight of evidence. See Civ. R. 59(A). The decision to grant a new trial is discretionary with the trial court, and is reviewed for abuse of discretion. Wagner v. Roche Laboratories (1999), 85 Ohio St.3d 457, 460,709 N.E.2d 162. A motion for a new trial is governed by Civ. R. 59(A):
 {¶ 8} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 9} "* * *
 {¶ 10} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 11} "* * * *Page 5 
 {¶ 12} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 13} "* * *
 {¶ 14} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
 {¶ 15} Civ. R. 59 allows, rather than mandates, a trial court to grant a new trial: "This rule provides that the trial court may grant a new trial if one of the specifically enumerated grounds exists or if good cause is shown. The rule does not require that the trial court grant a new trial, but, rather, the rule allows the court discretion to grant or not to grant a new trial." Eagle Am. Ins. Co. v. Frencho (1996),111 Ohio App.3d 213, 218, 675 N.E.2d 1312.
 {¶ 16} A trial court's decision to overrule a motion for a new trial is reviewed for abuse of discretion. Mannion v. Sandel (2001),91 Ohio St.3d 318, 321, 744 N.E.2d 759. An abuse of discretion in this context connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. Baker v. Dorion, 155 Ohio App.3d 560, 2003-Ohio-6834,802 N.E.2d 176, ¶ 13. In deciding whether to grant a new trial, a trial court should, "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result."Bland v. Graves (1993), 85 Ohio App.3d 644, 651, 620 N.E.2d 920, quoting 6A Moore, Federal Practice (1992).
 {¶ 17} In determining whether a new trial is warranted, "the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially *Page 6 
unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence."Rohde v. Farmer (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph three of the syllabus.
 {¶ 18} Appellant argues that Civ. R. 59(A) provides various grounds for a new trial, including when there are "inadequate damages, appearing to have been given under the influence of passion or prejudice." Appellant also contends that a new trial should be granted when the jury fails to consider an element of the case that is established by uncontroverted expert testimony. Appellant's argument on appeal is based primarily on the fact that there was only one expert witness in this case, Dr. Nardone, who gave a professional opinion about causation and damages. He stated that all of the treatment and care by all the medical professionals who treated Appellant was reasonable and necessary. (Tr., p. 257.) He testified that Appellant's injuries were permanent. (Tr., p. 262.) He testified that the auto accident was the direct cause of Appellant's neck and back problems, including her tension headaches. (Tr., p. 263.) Appellant contends that the jury should have relied on these unrebutted medical opinions and at least awarded the entire amount of medical bills submitted at trial, $8,213. Since the jury only awarded $6,653, Appellant contends that clear error occurred, warranting a new trial.
 {¶ 19} Appellant cites three cases in support. The first isScibelli v. Pannunzio, 7th Dist. No. 02CA175, 2003-Ohio-3488. InScibelli, which was a *Page 7 
medical malpractice case, a dentist failed to diagnose a tumor. All the experts at trial agreed that the delay in diagnosing the tumor necessitated the removal of at least one of the plaintiff's teeth, although the experts disagreed as to the exact number of teeth that were removed specifically due to the delay. The jury awarded no damages, and this Court reversed, holding that: "when it is clear that the jury failed to consider an element that was established by uncontroverted expert testimony, a trial court should grant a new trial." Id. at ¶ 19.
 {¶ 20} Appellant also cites Raniolo v. Edward J. DeBartolo Corp. (Nov. 3, 2000), 7th Dist. No. 99 C.A. 40, for the same principle. The plaintiff, Linda Raniolo, was maneuvering her car into a parking lot when it was struck by another car traveling at approximately 40 m.p.h. Ms. Raniolo did not experience any immediate pain, but soon complained of chest, knee, neck and lower back pain. X-rays indicated a straightening of the curve of the neck due to muscle spasms. An MRI indicated a herniated disc in her spine. Ms. Raniolo eventually needed surgery, which did not completely rid her of pain, and which left a disfiguring scar on her neck. She later had this scar treated by plastic surgery. The jury failed to award any damages for the cost of removing the scar, and she appealed. This Court held that the trial court should have granted additur due to the uncontroverted evidence that the scar was directly related to the automobile accident.
 {¶ 21} Appellant further cites Scott v. Mantua Grain Supply Co.
(Jan. 25, 1994), 7th Dist. No. 92 C.A. 182. In this case, Robert and Geraldine Scott were involved in an auto accident. The jury awarded Mr. Scott $14,000, but awarded *Page 8 
nothing to Mrs. Scott. Mrs. Scott filed a motion for a new trial, which was granted, and the defendant appealed. The defendant argued on appeal that Mrs. Scott's injuries were subjective injuries, and that the jury might have awarded zero damages because the jurors did not believe her testimony. This Court examined the trial court record and determined that there was uncontroverted evidence that Mrs. Scott was injured, that she endured pain and suffering, and that she had over $7,000 in medical bills from the accident. This evidence supported the trial court's decision to grant a new trial for Mrs. Scott, and thus, the trial court was affirmed.
 {¶ 22} The three cases that Appellant has cited do not support her argument on appeal. In all three cases, the evidence proving that the plaintiff was injured was actually unrebutted and uncontroverted, unlike the evidence in the instant appeal. In the Scibelli case, the experts agreed that at least one tooth was removed due to the delay in diagnosis, yet no damages were awarded. In Raniolo, the evidence was uncontroverted that Linda Raniolo was injured in the accident and needed surgery, and that this surgery caused a scar on her neck. InScott, the evidence was uncontroverted that Mrs. Scott was injured in the accident and had quantifiable medical bills of over $7,000. All three of these cases stand for the proposition, and we have consistently held, that a new trial, or at least a modified jury award, is warranted when the jury ignores uncontroverted evidence as to an element of damages, and where the verdict is not otherwise supported by some competent, credible evidence. See, e.g., Wright v. Kurth (Mar. 22, 2000), 7th Dist. No. 97-BA-39; Wade v. Witherstine (Dec. 22, 2000), 7th Dist. No. 99-CO-53. The record reflects, *Page 9 
however, considerable rebuttal evidence in the instant case, although we recognize that evidence did not appear in the form of a rebuttal expert witness.
 {¶ 23} When we refer to expert testimony as being uncontroverted, we are not limiting this term of art to simply refer to the failure of the defending party to provide a rebuttal expert witness. When the evidence is "uncontroverted," the record reflects that there is no rebuttal evidence at all, looking at the entire range of evidence presented at trial. "Rebuttal evidence" is evidence that explains, repels, counteracts, or disproves facts given in evidence by the adverse party.Nickey v. Brown (1982), 7 Ohio App.3d 32, 35, 454 N.E.2d 177. If only one expert testifies, cross-examination of that expert may very well reveal contradictions and even repudiations of earlier statements made by the expert. Inconsistencies and errors in an expert's testimony may qualify as rebuttal evidence. State v. Thompson (1987), 33 Ohio St.3d 1,11, 514 N.E.2d 407.
 {¶ 24} Moreover, the trier of fact is not required to believe the expert giving the testimony. McCall v. Mareino (2000),138 Ohio App.3d 794, 799, 742 N.E.2d 668. The trier of fact is free to believe or disbelieve any witness, including an expert witness. In re Baby GirlDoe, 149 Ohio App.3d 717, 735, 2002-Ohio-4470, 778 N.E.2d 1053, ¶ 75. "Once properly before the court, the expert's conclusions became a matter for the trier of fact." State v. Hartman (2001),93 Ohio St.3d 274, 285, 754 N.E.2d 1150. "[E]ven though a court may admit expert evidence, finding that it meets the threshold for reliability, the jury remains free to reject such evidence for any reason, including reasons of unreliability, incredulity, or clarity." Terry v. Ottawa Cty. *Page 10 Bd. of Mental Retardation Developmental Delay, 165 Ohio App.3d 638,2006-Ohio-866, 847 N.E.2d 1246, ¶ 28.
 {¶ 25} Appellant also has to contend with the principle that a reviewing court will usually defer to the trier of fact regarding evidence of subjective injuries, which include the type of soft tissue injuries that Appellant sustained: "There seems to be a tendency not to disturb the verdict as inadequate where the diagnosis of injury depended upon subjective symptoms, especially when the credibility of the plaintiff was seriously questioned." Wilson v. Johnson (1962),118 Ohio App. 101, 103, 193 N.E.2d 527.
 {¶ 26} It is true that there are parts of Dr. Nardone's testimony clearly supporting the conclusion that the car accident with Appellee caused Appellant's injuries, that all of Appellant's medical expenses were reasonable and necessary, and that Appellant's injuries were permanent. Dr. Nardone gave his professional opinion as to these matters. When one examines the details supporting those opinions, though, many problems appear. First, the objective evidence in the case does not show that Appellant suffered any injuries at all. While Appellant's counsel refers to the conclusions of Dr. Nardone as being based on "objective" tests, he is in error. Dr. Nardone's conclusions were entirely based on what Appellant told him, subjectively, about her complaints. The record reflects that she had x-rays taken soon after the accident that did not reveal any particular injury. No other diagnostic imaging tests were conducted, such as an MRI, which might have revealed more about her injuries. Appellant did not have surgery, and no other invasive tests were *Page 11 
done to directly view or probe her back and neck injuries. Appellant admitted that she suffered no pain immediately after the accident, and she was released from the hospital with no clear indication of her injuries. Obviously, none of this is conclusive as to the nature, extent or existence of Appellant's injuries. It is simply a fact that soft-tissue injuries often cannot be verified by objective diagnostic equipment such as x-rays.
 {¶ 27} Although Dr. Nardone testified that all the medical bills Appellant submitted were reasonable and necessary, his testimony on cross-examination revealed that there appeared to be no medical basis to justify most of Appellant's visits to him after June 10, 2004. Appellee's counsel questioned Dr. Nardone extensively about Appellant's office visit on June 10, 2004. Dr. Nardone repeated a series of evaluative procedures on that date to check, among other things, her hip joints, her lower back, and her ability to bend forward and back. Dr. Nardone found Appellant's responses to be normal except for some pain when she bent backwards. Dr. Nardone testified that, although he continued to treat her symptoms after June 10, 2004, he did not reevaluate her again until March 21, 2006. Appellee's cross-examination also indicated that Dr. Nardone failed to make any notations on Appellant's medical chart indicating that she had any injury-related symptoms for 16 of her office visits between April and August of 2004. (Tr., p. 288.)
 {¶ 28} Appellant's own testimony raised doubt as to whether any ongoing pain or back problems that she suffered were actually caused by the auto accident. She testified about preexisting conditions that might have contributed to her pain. The *Page 12 
record contains a number of references to a possible pinched nerve prior to the accident causing pain in her hip. She testified about migraine and tension headaches that regularly occurred both before and after the accident. Dr. Nardone testified that Appellant's office visit with Dr. Comerci on May 5, 2004, had been scheduled prior to her accident due to pre-existing migraine and tension headaches that clearly could have nothing to do with the auto accident. Dr. Nardone testified that muscle tension in the neck or upper back can cause tension headaches. The implication from the testimony is that some of Appellant's back and headache problems may have been due to a preexisting condition.
 {¶ 29} Appellant testified that she was working up to 100 hours per week. Dr. Nardone testified that Appellant's work schedule could produce back problems. She also testified about three trips she took in 2004 after the accident, to Jamaica, Las Vegas, and Chicago. Two of these vacations were taken just a few months after the accident, and the jury may have been inclined to interpret her ability to leave on these trips as being inconsistent with claims of ongoing or permanent back injury and back pain.
 {¶ 30} Looking at all the evidence, there appears to be considerable rebuttal evidence to counterbalance Dr. Nardone's opinion that Appellant suffered permanent injury, that any ongoing injury or pain were due to the auto accident, and that all the medical bills were reasonable and necessary. The distinction between this case and the cases cited in Appellant's brief is that the record in the instant case contains clear *Page 13 
rebuttal evidence from the expert himself, and from Appellant that appears to contradict the expert's initial professional opinion.
 {¶ 31} The jury did award Appellant some amount of damages, so this case does not fall into the most simplistic category where the jury simply fails to award any damages at all. The difference between what Appellant contends should have been the minimum amount of damages, $8,213, and the actual damage award, $6,653, is not so grossly disproportionate as to constitute a manifest injustice, especially since some doubt was cast on the medical necessity for treatment after June 10, 2004. There is no abuse of discretion in failing to grant a new trial, and this assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 32} "THE COURT ERRED IN CONCLUDING THAT ALLISON VS. DANIELS, NO. 01CA86 (MAHONING CTY. 9/20/02) MANDATED REJECTION OF THE PLAINTIFF'S PROPOSED VERDICT FORM."
 {¶ 33} Prior to trial, Appellant's counsel submitted a proposed verdict form that asked nine separate questions as to damages. The proposed verdict form stated the following:
 {¶ 34} "1. What amounts do you find will fully and fairly compensate Kelle R. McCabe for those items of damages she sustained as a result of the motor vehicle collision of April 1, 2004?
 {¶ 35} "1. Past medical bills $ ____________
 {¶ 36} "2. Future medical bills $ ____________ *Page 14 
 {¶ 37} "3. Past pain and suffering $ ____________
 {¶ 38} "4. Future pain and suffering $ ____________
 {¶ 39} "5. Past loss of enjoyment of life $ ____________
 {¶ 40} "6. Future loss of enjoyment of life $ ____________
 {¶ 41} "7. Past mental anguish and emotional distress $ ____________
 {¶ 42} "8. Future mental anguish and emotional distress $ ____________
 {¶ 43} "TOTAL $ ____________"
 {¶ 44} Appellant contends that this was an acceptable verdict form and should have been approved by the trial court.
 {¶ 45} "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." Peck v.Serio, 155 Ohio App.3d 471, 2003-Ohio-6561, 801 N.E.2d 890, ¶ 6.
 {¶ 46} The trial court rejected Appellant's verdict form because it did not ask the jury to render a general verdict and because it conflicted with this Court's holding in Allison v. Daniels, 7th Dist. No. 01 CA 86, 2002-Ohio-5027. Appellant contends that her proposed verdict form does not conflict with Allison because the Allison case was not reviewing a verdict form, but rather, a jury interrogatory. Appellant is correct to a certain degree. Allison did involve the issue as to whether a confusing jury interrogatory, rather than a confusing or incorrect verdict form, was properly withheld from the jury. InAllison, the plaintiff proposed for the jury a general verdict form and *Page 15 
a single interrogatory form with eight separate questions. The instant case, in contrast, involves a proposed verdict form that does not reflect a general verdict at all, but rather, contains a list of nine interrogatories. The trial court based his rejection of the proposed verdict form on Civ. R. 49, which states in pertinent part:
 {¶ 47} "(A) General verdict. A general verdict, by which the jury finds generally in favor of the prevailing party, shall be used.
 {¶ 48} "(B) General verdict accompanied by answer tointerrogatories. The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument."
 {¶ 49} Simply put, a verdict form that asks nine separate questions concerning the breakdown of the injuries and damages (and does not leave an option for the jury to reject a finding in favor of Appellant at all) is not a general verdict as set forth in the Rules of Civil Procedure. The trial court was correct in rejecting the proposed verdict form due to a violation of Civ. R. 49(A). It is well-established that, "[a] trial judge must require the jury to return a general verdict in a civil action for damages." Schellhouse v. Norfolk Western Ry. Co. (1991),61 Ohio St.3d 520, 575 N.E.2d 453, syllabus. The general verdict is supposed to record the overall result that the jury intended, and interrogatories can then be used to test that overall result. Id. at 526. If there is a conflict between the interrogatories and the general verdict, the court may ask the jury to review the verdict and interrogatories. Civ. R. 49(B). Appellant's proposed *Page 16 
verdict form fails to distinguish between general verdict and interrogatory, and was properly rejected.
 {¶ 50} Appellant next argues that the trial court was required to interpret the proposed verdict form as a demand to submit interrogatories. Appellant contends that a trial judge has no discretion in these matters, since Civ. R. 49(B) states that "[t]he courtshall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument." (Emphasis added.) It is true that the word "shall" in this context normally indicates a command, but the Ohio Supreme Court has held that the trial court still retains some discretion in withholding interrogatories: "Although Civ. R. 49(B) mandates the submission of requested interrogatories, the court still has the discretion to reject interrogatories that are ambiguous, confusing, redundant, or otherwise legally objectionable." Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 259, 662 N.E.2d 1.
 {¶ 51} Appellant's argument is not persuasive. The form that Appellant's counsel submitted to the trial court was a verdict form, and the court properly treated it as such rather than as a verdict form with accompanying interrogatories. Whether the questions in the verdict form, such as the amount for past medical bills, the amount for future pain and suffering, etc., would have been acceptable as jury interrogatories is a moot point, since the questions were not presented as interrogatories and because no interrogatories were ever properly submitted to the trial court. (Tr., p. 336f.) Furthermore, the questions as presented in the proposed *Page 17 
general verdict form suffered from at least some of the same problems as the interrogatory form used in Allison. In Allison, we noted that, "[e]ach of the eight items listed in the interrogatory should have included the words `if any' (e.g., `lost wages, if any') to make it clear that the jury was not required to award damages for each and every named injury." Id. at ¶ 42. The general verdict form proposed by Appellant did not include the words "if any," and thus, created the same confusion as the interrogatory form used in Allison.
 {¶ 52} The danger that interrogatories may confuse the jury was an issue in Allison and is also an issue in this case. The form submitted by Appellant's counsel listed all nine questions together, requiring the jury to vote on all nine questions together. Interrogatories are required to be presented so that each juror may vote on each separate factual issue. As we stated in Allison:
 {¶ 53} "It may also have confused the jury that there were eight separate factual decisions presented by the interrogatories, but not eight separate vote forms as would be expected. See, e.g., 1 Ohio Jury Instructions (2002), Section 23.07. As each juror is generally entitled to participate in the decision of every question presented, there should have been separate vote forms for each of the eight factual issues in the interrogatory. See Simpson v. Springer (1943), 74 Ohio App. 142,143, 57 N.E.2d 817." Allison, supra, at ¶ 43.
 {¶ 54} Because the proposed general verdict form was actually a series of interrogatories erroneously presented in the form of a general verdict, the trial court *Page 18 
properly rejected the proposed verdict as being in conflict with Civ. R. 49(A) and in conflict with the holding in Allison. This assignment of error is overruled.
 {¶ 55} In conclusion, the record reveals no manifest injustice in the jury award and no error when the trial court rejected Appellant's proposed verdict form. Both of Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1