Donald J. KOKESH, Plaintiff-Appellee,

v.

AMERICAN STEAMSHIP COMPANY, Defendant-Appellant.

No. 82–1765.

United States Court of Appeals, Sixth Circuit.

Argued July 13, 1984.

Decided Nov. 9, 1984.

Wellford, Circuit Judge, dissented and filed opinion.

Paul D. Galea (argued), John Arthur Hamilton, Foster, Meadows & Ballard, Detroit, Mich., for defendant-appellant.

William R. Morris, Leonard C. Jaques (argued), Detroit, Mich., for plaintiff-appellee.

Before ENGEL and WELLFORD, Circuit Judges and HORTON, District Judge.[*]

ENGEL, Circuit Judge.

Defendant American Steamship Company (the Company) appeals from a judgment of the United States District Court for the Eastern District of Michigan awarding plaintiff Donald J. Kokesh $500,000 plus interest following a jury trial. We affirm.

Kokesh claimed that he was injured twice during the course of his employment by the Company. The first incident occurred on May 6, 1978 when Kokesh was serving as a bosun aboard the M/V Charles Wilson, owned by the Company. The second incident occurred on October 20, 1979 while Kokesh was serving as a bosun aboard a second ship owned by the Company, the M/V Consumers Power.

Kokesh stated that, at the time of the second incident, he was on the deck of the Consumers Power "giving distance" as the vessel made its way beneath several bridges spanning the Maumee River between Toledo Harbor and Lake Erie. He testified that he slipped and fell on the deck, which was slippery because it had been flooded with Maumee River water that was polluted with raw sewage. Kokesh attributed the flooding to defendant's negligence: specifically, Kokesh claimed that the Company negligently filled the vessel's ballast tanks to overflowing and allowed excess water to spill on the deck instead of venting it overboard with a hose. Kokesh also claimed that defendant negligently maintained the deck itself by failing to keep it adequately painted with non-skid material.

Kokesh's complaint asserted that each incident gave rise to two causes of action: one for negligence under the Jones Act, 46 U.S.C. § 688, and one for unseaworthiness of the vessel under the general admiralty and maritime law. The jury found for the defendant on both claims arising out of the incident aboard the M/V Charles Wilson. However, with respect to the incident on the M/V Consumers Power, the jury concluded that even though the vessel was seaworthy, the defendant had been negligent.

---

[*] The Honorable Odell Horton, Judge of the United States District Court for the Western District of Tennessee, sitting by designation.

The Company makes two principal arguments for reversal. First, it asserts that the jury's findings for the plaintiff on the negligence claim and for the defendant on the unseaworthiness claim are irreconcilable and that, as a result, a new trial must be ordered. Next, the Company contends that the jury verdict was excessive and that it was caused by an answer to an improper leading question and by inflammatory remarks made by plaintiff's counsel during trial and especially during closing argument.

## I.

With respect to the Company's contention that the jury's findings are inconsistent, we note that the trial judge instructed the jury that it could reach opposite verdicts on the negligence and unseaworthiness claims:

> The claims of negligence and of unseaworthiness, are different, and you must consider them separately in accordance with these instructions. As to a particular incident, you may find for Donald Kokesh on both the claim of negligence and the claim of unseaworthiness, or for him on one and not on the other, or for American Steamship on both claims, all depending on how you find the facts.

The Company did not object to this instruction. The district court also instructed the jury that the Company had a duty to exercise "ordinary care," and that if the Company's negligence "contributed in any way toward any injury or damage suffered by Donald Kokesh, you may find that such injury or damage was caused by American Steamship's omission." The instruction on unseaworthiness provided that the jury could find the Consumers Power unseaworthy if it found "any unfitness due to a lack of adequate and safe devices and methods, reasonably fit for their intended purpose."

■ A failure to exercise ordinary care may or may not result in an unfit vessel. The jury could have concluded from the proof that although the defendant did not exercise ordinary care in allowing the deck to be made slippery by overflow from the vessel's ballast tanks, the flooding of the deck did not make the vessel unseaworthy. Indeed, there was testimony that the deck's safety had been enhanced by non-skid paint, and it is reasonable to conclude from its verdict on the unseaworthiness count that the jury believed the defendant's proof in this regard. At the same time, the jurors may have believed that the deck's wetness contributed to Kokesh's fall, compelling them to find that his injury was caused by the Company's negligence. Thus, the jury's findings can be harmonized.[1]

Even were the Company correct in its claim that the verdicts were inconsistent, based upon the proofs here we do not believe that such inconsistency was prejudicial. The verdict plainly reflects the jury's belief that the Company was negligent and that such negligence caused Kokesh's injuries. The only error, therefore, would have been the jury's failure, as a matter of law, to return a verdict in plaintiff's favor on the unseaworthiness count as well. Thus, even if we agreed with the Company's contention that the verdict was in error because it was inconsistent—and we do not— we are convinced that the error would have been entirely harmless.

## II.

■ We also are not persuaded that the leading question and inflammatory remarks by plaintiff's counsel compel reversal. While questioning his client about his client's yearly earnings before the injury, plaintiff's counsel asked: "Your testimony is up to thirty-two thousand and more, is that your understanding?" While this question was no doubt leading, defense counsel did not object to it at trial, and it

---

1. In *Bernardini v. Rederi A/B Saturnus,* 512 F.2d 660 (2d Cir.1975), the court concluded that the jury's finding that the vessel was not unseaworthy and its finding that the owner was negligent were irreconcilable. However, unlike here, the trial judge had implicitly "recognized in his charge that a finding of unseaworthiness was a precondition to a finding of negligence." *Id.* at 663.

was not incumbent upon the trial judge to intervene absent an objection.

Leading questions are frequently tolerated by opposing counsel because they speed up the trial. This is especially true when there is no good reason to challenge the accuracy of the witness' answer and a timely objection will merely lead to the presentation of direct and thus more convincing proof. These observations are especially apt here, because Kokesh was the Company's employee, and the Company would know from its own records whether his estimate of his wages was accurate.

■ Similarly, while some of the remarks made by plaintiff's counsel during closing argument were inappropriate, they were not so egregious as to require a new trial when defense counsel did not make a contemporaneous objection.

### III.

■ Finally, although the Company claims that the jury's award of $500,000 is "grossly excessive" for the plaintiff's injury, we find substantial evidence in the record from which a rational jury could have arrived at this figure. The Company in its brief and during oral argument vigorously stressed contrary evidence tending to show that Kokesh was not as seriously injured as he maintains. At best, however, this argument convinces us that the conflicting proof on the question of damages was properly for the jury to weigh and decide.

On the basis of his examination of the plaintiff, Dr. Stephen E. Newman testified that Kokesh had suffered a permanent injury to his back muscles and permanent damage to a disc. Dr. Newman offered the following prognosis:

[T]hese problems that occur are permanent. He's always going to have to treat his back in an exceptional manner ... for any type of activity of any sort in terms of lifting, bending, turning, or twisting. He's going to continue to have discomfort in this area regardless if he has surgery or otherwise.

Dr. Newman also expressed the opinion that the plaintiff should not engage in "repetitive activities in terms of lifting, bending, turning, twisting" and should "become reoriented ... to a more sedentary occupation."

The plaintiff testified that his position on the Consumers Power had involved deck work, and that because of the limitations on exertion recommended by his physician he had decided he could not return to that job. He further testified that his inability to stand for an extended period precluded his switching to a "wheeling" or "watching" position, and that there is no such thing as a "light duty job" on a lake carrier. According to Kokesh, he had earned only $9,900 the previous year working in an auto parts store. At the same time, he answered in the affirmative when asked on the stand whether he earned "up to thirty-two thousand and more" as a seaman in 1978. Since Kokesh testified that he was only thirty-five years old at the time of the trial, which took place about two-and-a-half years after his injury, the jury rationally could have based its $500,000 award simply on the evidence that Kokesh's earning capacity would be impaired for the rest of his working life.

The size of the award may also reflect the evidence that Kokesh continues to suffer from pain and that his ability to enjoy life has been impaired. Kokesh testified that his back was sore, that he now wears a back brace "just about all the time," and that he is awakened at night by muscle cramps in his leg. He also testified that he used to enjoy hunting and fishing and that he can no longer hunt and does very little fishing.

■ In upholding the jury's award, we decline to apply here the principle of *Rodgers v. Fisher Body Division*, 739 F.2d 1102 (6th Cir.1984). In *Rodgers*, our court, considering the issue *sua sponte*, held that "[i]t was plain error for the [trial] court not to instruct [the jury] on reducing future damages (loss of income) to present value." At 1107. The present value issue in *Rodgers* was raised by our court even though

neither party had proposed a present value charge or objected to the trial judge's instructions on compensatory damages. *Id.* at 1106. Here, too, the trial court did not instruct the jury to reduce future damages to present value, and neither party has raised the issue on appeal. The court in *Rodgers* concluded, upon the particular facts before it, that the absence of such a charge was "to some degree responsible for a shockingly large verdict" and that an instruction on reduction to present worth was necessary upon remand to avoid a repetition of what the court found to be a grossly excessive damage award. *Id.* at 1106–1107. We are confident that the *Rodgers* court did not intend to pronounce an invariable rule of general application.

Our reluctance to apply *Rodgers* to the particular situation before us is also motivated in part by our need to adhere to the Supreme Court's analysis in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), another case involving federal maritime law. In that decision, the Court refused to adopt any single rule "as the exclusive method in all federal trials for calculating an award for lost earnings in an inflationary economy." *Id.* 103 S.Ct. at 2555. The Court noted that one possible approach is to assume that the market rate of interest is exactly offset by price inflation and productivity gains, sparing the trier of fact "the need to cope with inflation estimates, productivity trends, and present value tables." *Id.* 103 S.Ct. at 2557 n. 32. Writing for a unanimous Court, Justice Stevens explained:

> Although such an approach has the virtue of simplicity and may even be economically precise, we cannot at this time agree with the Court of Appeals for the Third Circuit that its use is mandatory in the federal courts. Naturally, Congress could require it if it chose to do so. And nothing prevents parties interested in keeping litigation costs under control from stipulating to its use before trial.

*Id.* 103 S.Ct. at 2557 (footnotes omitted).

Litigants in the federal courts frequently agree to forego the time and expense involved in proving inflationary trends and discount rates in trials involving lost future wages. In many cases, defense counsel may wisely conclude that there is little benefit to be gained and substantial prejudice to be risked in giving the jury a very particularized instruction on the calculation of damages. Given the vigorous advocacy and degree of legal skill reflected in the trial of this case, we are led to conclude that the failure to request more particularized instructions was intentional and probably represented an intelligent employment of trial strategy.

We agree with the trial judge that while the award of damages here may have been generous, it was supported by sufficient proof in the case, and was not shockingly large. We see no reason to question the jury instructions solely because they did not include a charge on reducing future damages to present worth, an instruction which neither party requested or evidently desired.

This lawsuit was vigorously tried by both parties in the district court. The jury verdict which resulted was no doubt larger than had been anticipated by the defense, but no error, plain or otherwise, produced it. Although the defense may harbor the lingering hope that some other defense might have produced a different result, we doubt it. The tactical and strategical decisions made by the defense seem to have been as sensible as any others which might have been made at the time. That a different strategy might possibly have produced a different result does not provide any basis for reversal.

AFFIRMED.

WELLFORD, Circuit Judge, dissenting.

## I. IRRECONCILABLE VERDICTS

Plaintiff Kokesh alleged that defendant American Steamship Company (ASC) should be held liable for his claimed injury as a seaman aboard the vessel *Consumers Power,* because of a negligent breach of its duty to use reasonable care under the cir-

cumstances by "deliberately flooding the decks ... and deliberately failing to make the deck reasonably safe by placing non-skid material on the clear and shiny surface." Further, plaintiff contended that the *Consumers Power* was unseaworthy at the time and place of claimed injury for its failure to fulfill "its absolute duty to provide a reasonably safe deck area for the plaintiff to work in and further arose by inappropriately requiring the deck to be flooded from ballast tanks ...." The jury held for plaintiff on the negligence claim but held for defendant ASC that it had met its absolute duty to provide a seaworthy vessel as to claims describing negligent conduct under the Jones Act count, even though plaintiff's claims described essentially the same conduct as negligence under the Jones Act and as unseaworthiness under the companion maritime law count.

In this case plaintiff described the factual basis for the Jones Act (negligence) claim in almost the same terms as the unseaworthiness, strict liability claim. In a similar kind of case involving like claims, pertaining to a fall and asserted injuries on a slippery deck, another court has held that a verdict for defendant on the unseaworthiness count is essentially inconsistent and irreconciliable with a verdict for plaintiff on a negligence claim arising out of the same set of circumstances and the same kind of dual claim from a single accident or episode. *Bernardini v. Rederi A/B Saturnus*, 512 F.2d 660 (2d Cir.1975). *See also Turner v. "The Cabins," Tanker, Inc.*, 327 F.Supp. 515 (D.Del.1971).

As in the two cases above cited, it appears that a holding that there was nothing in the condition of the vessel, *Consumers Power*, including its decks and ballast tanks, which might render the defendant liable on an unseaworthy basis (a more demanding standard than negligence), is irreconcilable with a holding that the failure to furnish non-skid material on a deck subject to flooding from overflowing ballast tanks renders the defendant liable for negligence. *See Spano v. N.V. Koninklijke Rotterdamsche Lloyd*, 472 F.2d 33, 35 n. 1 (2d Cir.1973); *Nosal v. Calmar Steam-*

*ship Corp.*, 339 F.Supp. 1235, 1238 (E.D. Pa.1972), aff'd, 475 F.2d 1395 (3d Cir.1973); *Poller v. Thorden Lines A/B*, 336 F.Supp. 1231, 1232 (E.D.Pa.1970).

Plaintiff's claim here essentially was that allowing or even bring about flooding of the decks from overflowing ballast tanks in the absence of non-skid deck material or covering was a negligent condition causally related to plaintiff's fall and his injuries. Plaintiff claimed, and argued, that it was an *unseaworthy* condition and defendant should be held liable under maritime law principles; he argued also that defendant was *negligent* in permitting or countenancing this same condition and should be held liable under the Jones Act. Plaintiff, under these circumstances, by pressing these two essentially like claims, was taking the risk of inconsistent verdicts, which might be very difficult to reconcile or not even subject to reconciliation. Thus, although defendant did not object to the instructions that the two claims be considered separately, I am persuaded that one cannot logically and consistently reconcile the affirmative Jones Act verdict with the negative maritime unseaworthiness holding, and that allowing the two verdicts to stand works a prejudice and permits doubt and uncertainty to prevail. The insistence upon pressing these claims under these circumstances invited error, and the court's agreement to submit them and its failure to set aside the negligence verdict, in my view, was not harmless error.

## II.  EXCESSIVE DAMAGES

Even if plaintiff were entitled to the benefit of a Jones Act verdict despite the serious misgivings above expressed, I would find the jury's award of $500,000 to be grossly excessive. Kokesh testified that he was not sure about his earnings at the time of the injury in question but was "some place" in the "twenty, thirty" range. He also testified that he was found fit to return to work within three months of his injury and hospitalization and has continued to be employed in other than seaman-

longshoreman work earning about $10,000 a year. At most, this would establish a $20,000 differential in annual earnings, and despite "discomfort" in the back and neck area, Kokesh is neither seriously nor substantially disabled.

Even with a fair award for pain and suffering to be taken into account, in the light of the evidence in this case, the award was clearly beyond the bonds of reasonableness. Failure to instruct on reduction of damages to present value is also a factor to be considered in respect to this excessive award. *See Rodgers v. Fisher Body Division,* 739 F.2d 1102 (6th Cir.1984). I would therefore remand the case on this basis also.