OPINION
{¶ 1} Plaintiffs-appellants Thomas J. and Pamela S. Newland ("the Newlands") bring this appeal from the judgment of the Court of Common Pleas of Hardin County finding in favor of defendant-appellee James' Floors and Interior, Inc. ("James"). For the reasons stated below, the judgment is affirmed.
 {¶ 2} In 2001, the Newlands were in the process of building a new home. They contracted, through their general contractor, with James to install a tile floor in their kitchen. In September 2003, the Newlands noticed that several hairline cracks had formed in the grout and in the tiles themselves. The Newlands contacted James who contacted the manufacturer. In December of 2003, a representative of the manufacturer, Jim Davis ("Davis"), came to the home to inspect the problem. Davis reviewed the materials and methods used in installation, inspected the sub-floor, and consulted the product manuals. He then determined that the cracks were due to the shifting or other movement in the sub-floor. *Page 3 
The Newlands subsequently sought a second opinion and an estimate for the costs of repairs.
 {¶ 3} On August 20, 2005, the Newlands filed a complaint alleging 1) breach of contract, 2) breach of express warranty, 3) breach of implied warranty of merchantability, and 4) negligence in the installation of the floor. The answer was filed on September 27, 2005. Following written discovery, James filed a third party complaint and cross-claim against CKP, the general contractor, on February 27, 2006. On February 22, 2007, a bench trial was held. The parties submitted testimony, including that of competing experts, and multiple exhibits. On April 30, 2007, the trial court entered judgment in favor of James. An appeal was filed on May 25, 2007, but was subsequently dismissed by this court as not a final appealable order. The trial court entered its final appealable order resolving all claims pending on July 9, 2007. On July 24, 2007, the Newlands filed their notice of appeal from the judgment in favor of James and raise the following assignment of error.
 The trial court erred and abused its discretion in its ruling filed April 20, 2007, when it rendered judgment in favor of [James] and against [the Newlands] on their claim filed herein as same was against the manifest weight of the evidence.
 {¶ 4} The sole assignment of error claims that the trial court's verdict was against the manifest weight of the evidence.
 [T]he civil manifest-weight-of-the-evidence standard was explained in C.E. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d *Page 4 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence"). We have also recognized when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 461 N.E.2d 1273. This presumption arises because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80 * * *. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. at 81 * * *.
State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24,865 N.E.2d 1264. Thus, the judgment will only be reversed if there is no competent, credible evidence to support the findings of the trial court.
 {¶ 5} A review of the record indicates that the trial court reviewed all of the claims raised by the Newlands in their complaint. The trial court made the following findings of fact.
 The Court finds the facts to be relatively straight forward. [The Newlands], during 2001, were building a new home in rural Hardin County, Ohio and met with [James], concerning tile for their new dining room and kitchen floors. After at least three meetings, at various times with either or both [of the Newlands], [the Newlands] agreed upon a tile and contract with James to provide and install the same. It should be noted that James received a signed contract for the tile from CKP, who also paid James for the same. While CKP was acting as the general contractor for [the Newlands] and assumed the role as purchaser *Page 5 for the tile, clearly it was [the Newlands] who verbally agreed with James as to the type, style, color and manner of installation of tile and therefore there is privity of contract between [the Newlands] and James.
 Russell Varner testified that he had worked for James for many years and had installed this type of tile on previous occasions. The installation was performed in part by, and supervised entirely by Varner. Testimony revealed that Varner prepared the sub-floor, which consisted of OSB Board, by cleaning it and sanding the seams. After that he applied thin set to the floor and over that he nailed TEC ¼" utilicrete full flex cement board to the sub-floor. Before the tile was laid, a layer of super flex compound was applied to the floor. The tile was then installed over this layer.
 Sometime in the latter part of 2003 [the Newlands] notice (sic) that some of the tile had cracked. They called James, who inspected the floor and he then called [Davis] to inspect the tile. [Davis] testified that he worked for the tile company in 2003 and that he inspected the tile. He concluded from his inspection that many factors, such as wood construction always has some movement due to expanding and contracting with the seasons; at some point in time the OSB board was wet; and OSB board contact with I beams was not good (fasteners were coming loose), could be the cause of the cracking. Davis testified further that James performed the job in accordance with industry standards and that James did the job correctly. In the end Davis said that his recommended fix would be to replace the broken tiles, but only if that actual tile is still available, otherwise it would cause aesthetic concerns.
 [The Newlands] had Shawn R. Stump, owner of SH Custom Carpet and a tile salesman and installer testify that he inspected the tile. He then submitted an estimate for replacing the entire floor for some $7, 624.98. On cross examination he admitted that he had not attempted to inspect the sub floor or the joists and could not say what method was used to install the tile and that the cracked tiles could be replaced without replacing the entire floor. Both Stump and Davis agreed that there was no evidence as to what caused the tile to crack. *Page 6 
 James testified that he called the tile company during his negotiations with [the Newlands] and they assured him that the way he eventually installed the tile was a proper way. The Parties dispute how many times they met, who was present and whether James told them of the possibility of cracking. [The Newlands] testified that had they known of the possibility of cracking, that they would not have installed the tile.
 The Court conducted a view of the premises prior to trial. Upon initial entry into the subject kitchen/dining area, no cracks were visible and had to be pointed out to the Court. There were tiles that were cracked in half running for some length through the main walk way. More visible cracks were noticed behind the island and near the cabinets, some in the grout and some in the tiles themselves. When asked by the Court, [Mrs. Newland], acknowledged that the cracks were a source of constant aggravation to her and that she feels that she did not get the floor that she wanted and that it was more of an aesthetic matter than a functional one.
April 30, 2007, Entry, 2-5. All of these findings are supported by the evidence presented at trial. Based upon these findings, the trial court made the following conclusions of law.
 [The Newlands] in their complaint, allege several causes of action * * *. The evidence presented by [the Newlands] was devoid of any specific acts that James did or did not perform that constituted a breach of the contract to supply and install the tile. Further, no evidence was presented that there existed any written or verbal guarantee against cracking, with the only evidence being [the Newlands'] assertion that James did not warn them of the possibility of the cracking. While [the Newlands] assert that the floor was improperly installed, they produced no direct evidence that the manner in which the floor was installed by James was improper. In fact the only testimony at trial was to the effect that James installed the tile properly and that [the Newlands'] expert would install the replacement tile in the same manner. Finally [the Newlands] claim that *Page 7 James negligently installed the tile, but they did not present any evidence of negligence on the part of James. Merely stating that the tile cracked and that it was due to no fault of their or the contractor who built the structure, therefore it must have been installed improperly by James, raises issues that were not specifically pled or presented by [the Newlands]. It would appear, and the experts agreed, that the tile cracked because of the wood construction which causes movement in the sub-floor.
Id. at 5-6. The trial court then continued to find that the Newlands had not met their burden of proof and entered judgment in favor of James.
 {¶ 6} On appeal, the Newlands' argument is that since everyone agreed that the tile should not have cracked within two years, it must have been installed improperly. The Newlands' specifically claim that James installed the flooring in "direct contravention of all manufacturer directives and specifications in place in 2001 as set forth in [the Newlands'] trial exhibits "J" and "K." Appellants' Brief, 4. The trial court specifically addressed this issue and found that no evidence was presented that it was installed improperly. "In fact the only testimony at trial was to the effect that James installed the tile properly and that Plaintiffs' expert would install the replacement tile in the same manner." April 30, 2007 Entry, 5.
 {¶ 7} The exhibits presented by the Newlands came from the websites of the manufacturers of the backerboard and the thin set mortar. Both of these websites indicated that OSB is not the appropriate backing for the products. However, the Newlands also presented a letter from the tile company representative which inspected the property and reviewed the installation. The *Page 8 
letter indicates that the inspector knew the products were used over OSB and concluded that the products used, including the backerboard and thin set, were properly installed and that the problems were caused by the house settling. Ex. J. The testimony of all the experts was that the products were properly installed. Given this conflicting testimony, the trial court did not abuse its discretion in determining that the cracking was due to movement in the sub-floor for an unknown reason. This finding was supported by some credible evidence. Therefore, the judgment of the trial court was not against the manifest weight of the evidence and the trial court did not abuse its discretion in ruling in favor of James. The assignment of error is overruled.
 {¶ 8} Having determined that the trial court committed no error prejudicial to the appellants in any of the particulars assigned and argued in appellants' brief, the appellee is entitled to have the judgment of the trial court affirmed as a matter of law. The judgment of the Court of Common Pleas of Hardin County is affirmed.
Judgment affirmed.
 SHAW, P.J., and PRESTON, J., concur. *Page 1