McNEIL, Appellee and Cross–Appellant,

v.

KINGSLEY, Appellant and Cross–Appellee.

[Cite as *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–08–13.

Decided Oct. 27, 2008.

John K. Rinehardt, for appellee and cross-appellant.

Joseph G. Ritzler, for appellant and cross-appellee.

PRESTON, Judge.

{¶ 1} Defendant-appellant, Sarah Kingsley, appeals the judgment entered by the Marion County Court of Common Pleas after the jury awarded plaintiff-appellee (and cross-appellant below), Sarah McNeil, $350,000. McNeil also appeals the award of prejudgment interest by the court. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} On December 4, 2002, Kingsley and McNeil were involved in an automobile accident when Kingsley's car struck McNeil's car from behind while she was stopped at an intersection. McNeil filed her complaint against Kingsley on December 3, 2004, claiming that Kingsley's negligence caused her injuries.

Kingsley admitted that she had breached her duty of care. However, Kingsley contested that her breach was the proximate cause of all of McNeil's alleged injuries and damages.

{¶ 3} The jury trial began on November 5, 2007. On November 7, 2007, the jury awarded McNeil $350,000, and the trial court entered the award in its judgment entry on November 14, 2007.

{¶ 4} Following the trial, McNeil filed a motion for prejudgment interest, merger, and postjudgment interest. Kingsley also filed a motion for remittitur and/or new trial and a motion for a judgment notwithstanding the verdict. The trial court held a hearing on all of the posttrial motions on February 13, 2008. Thereafter, on February 15, 2008, the trial court entered a judgment granting McNeil's motion for prejudgment interest in the amount of $18,187.63, as well as McNeil's motion for postjudgment interest. However, the trial court denied Kingsley's motions for remittitur and/or new trial and judgment notwithstanding the verdict.

{¶ 5} Both McNeil and Kingsley now appeal the trial court's judgment. Kingsley raises four assignments of error for review, and McNeil raises one cross-assignment of error. We will address Kingsley's second assignment of error first, and then we will address her first, third and fourth assignments of error. We will then discuss McNeil's cross-assignment of error at the end of Kingsley's assignments of error.

## KINGSLEY'S ASSIGNMENT OF ERROR NO. II

The verdict is against the manifest weight of the evidence.

{¶ 6} In her second assignment of error, Kingsley argues that the jury's award of "*Fantozzi* damages" was improper because there was no evidence to support this particular type of damage award.

{¶ 7} In determining whether a judgment is against the manifest weight of the evidence, we cannot substitute our judgment for that of the jury. The jury is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Instead, we must determine whether the jury's verdict is supported by some competent, credible evidence going to all the essential elements of the case. Id.; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 8} Kingsley claims that there was no evidence to support the *Fantozzi* damages. These damages were first announced in *Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64, Ohio St.3d 601, 597 N.E.2d 474, wherein the court held:

[w]here an individual suffers personal injuries, the question of damages for "loss of ability to perform the plaintiff's usual functions" may, when evidence thereon has been adduced, be submitted to the jury in an instruction, and set forth in a special interrogatory and separate finding of damages, provided, however, that the court instructs the jury that if it awards such damages, it shall not award additional damages for that same loss when considering any other element of damages, such as physical and mental pain and suffering.

Id. at paragraph two of the syllabus. The court in *Fantozzi* described what activities would fall under the category of "usual functions," which included "the basic mechanical bodily movements that accommodate walking, climbing stairs, feeding oneself, driving a car, etc. * * * [also] evidence of the plaintiff's inability to perform the usual activities of life that have actually provided distinct pleasure to this particular plaintiff, these being the so-called 'hedonic' damages." Id. at 614, 597 N.E.2d 474.

{¶ 9} In the case at bar, McNeil presented several witnesses who testified about their observations of her after the accident. McNeil testified that the day after the accident she visited her family doctor about the pain she was experiencing. She then visited a chiropractor, but after the results of an MRI revealed a herniated disk, she visited Dr. Bonasso, a neurosurgeon. Following her consultation with Dr. Bonasso, she had back surgery on the herniated disk. In addition, because of the surgery, she later developed scar tissue and thus had to have another surgery. McNeil further testified that she currently has trouble sleeping, sitting for long hours, and she has to second-guess many of her decisions in order to protect her back from further injury.

{¶ 10} In addition to McNeil's testimony, one of her friends, Susie Webb, testified that McNeil experienced problems standing, doing the dishes, and picking up her son. She claimed that McNeil could not sit for long periods of time and could no longer go on all-day shopping trips. McNeil's physical therapist testified that McNeil could not walk for more than one mile without becoming fatigued, nor could she sit or stand for longer than 30 minutes. McNeil's father testified that McNeil was less active in their pool, she was unable to help their family set up for family events, and she struggled to pick up her son. McNeil's mother testified that since the accident, McNeil could no longer play ball, which she had participated in since she was little. Furthermore, her mother claimed McNeil had trouble going up and down steps with ease and could not carry things up and down steps. Moreover, McNeil's husband testified that McNeil needed help doing laundry, vacuuming, and the dishes. He also testified that it was hard for McNeil to get off the floor with her son when she was playing with him, and that she experienced problems trying to give her son a bath in

their bathtub. Additionally, he testified that after they were married they bought a ranch house so McNeil wouldn't have to cope with stairs.

{¶ 11} Kingsley argues that the evidence presented above was not evidence of McNeil's inability to perform some or all of her usual activities. In particular, Kingsley argues that McNeil's testimony concerning her inability to participate in the police wives' bowling league was not truthful, because she did not start dating her police officer husband until 2004, which was after the accident and her surgeries. In regard to Susie Webb's testimony, Kingsley claims that her testimony is not credible because the two did not meet and go shopping until after the accident. Furthermore, in response to her parents' testimony, Kingsley claims that their testimony failed to indicate any loss of McNeil's ability to perform her usual functions.

{¶ 12} In addition, Kingsley claims that the only testimony McNeil's neurosurgeon provided regarding McNeil's future potential problems was the following: "I think that, you know, the majority of patients with these kinds of problems experience intermittent pain with certain activities, weather changes, et cetera, and it's not uncommon to have good days and bad days, you know, indefinitely."

{¶ 13} Kingsley's arguments lack merit. First of all, this court has previously held that there is no requirement that a plaintiff must present expert testimony to support a damage award for inability to perform usual functions. *Deskins v. Cunningham*, 3d Dist. No. 14–05–29, 2006-Ohio-2003, 2006 WL 1061979, ¶ 42. Therefore, while Dr. Bonasso's testimony may not have provided evidence of McNeil's specific inability to perform usual functions, we find that there was sufficient laywitness testimony regarding the loss of some of her usual functions.

{¶ 14} Several witnesses testified that McNeil has trouble sitting and standing for a long period of time. In addition, there was testimony about her inability to walk up and down stairs, a problem that even led her and her husband to choose a one-story house to live in. Furthermore, there was testimony that she could not participate in the activities that once gave her pleasure, such as playing ball, swimming, and now playing with her son. All of these activities fall within the category the Ohio Supreme Court defined as the " 'loss of ability to perform the plaintiff's usual functions.' " *Fantozzi*, 64 Ohio St.3d at 619, 597 N.E.2d 474.

{¶ 15} Moreover, the jury filled out an interrogatory evidencing the particular amount they awarded for certain categories of damages. The jury's interrogatory provided the following:

| | |
|---|---|
| Past Medical Expenses: | $15,975.80 |
| Past Physical Pain and Mental Suffering: | $37,500 |
| Past Loss of Earnings: | $9,500.72 |
| Past Inability to Perform Some of Usual Activities or Engage fully in such Activities: | $37,500 |
| Future Physical Pain and Mental Suffering: | $124,761.74 |
| Future Inability to Perform Some or all of Usual Activities or Inability To Engage in such Activities: | $124,761.74 |
| Total: | $350,000 |

{¶ 16} Essentially, Kingsley argues that the witness testimony presented by McNeil was not credible for various reasons. However, as stated above, it is not this court's duty to reweigh the credibility of each witness; rather, the jury is in a better position to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence. *Seasons Coal Co.*, 10 Ohio St.3d at 80, 10 OBR 408, 461 N.E.2d 1273. Thus, we may not reverse even though we may hold a different opinion as to the credibility of the witnesses and evidence. *Newland v. James Floors Interior, Inc.*, 3d Dist. No. 6-07-21, 2008-Ohio-275, 2008 WL 216525, ¶ 4, quoting *Seasons Coal*. Given the breakdown of damages, the jury clearly chose to give more weight to the testimony of McNeil's witnesses with respect to McNeil's loss of the ability to engage in some or all of her usual activities.

{¶ 17} Therefore, after a review of the record, we find that there was competent, credible evidence demonstrating that McNeil suffered a loss of her ability to engage in some or all of her usual functions. We do not find the jury's award of *Fantozzi* damages to be against the manifest weight of the evidence.

{¶ 18} Kingsley also argues that since the jury could not rely on the testimony of McNeil's witnesses regarding McNeil's loss of her ability to perform some or all of her usual functions, the jury "award of nearly $250,000 for future pain and suffering and inability to perform usual activities can only be described as an amount awarded due to passion for the Appellee and/or prejudice against the Appellant in this case." However, we have previously held that when a party argues that the trier of fact's decision was the result of passion or prejudice, it is a matter of proof from the record and "it must be shown that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." *Cook v. Sparks* (Nov. 5, 1991), 3d Dist. No. 17–90–16, 1991 WL 229250, at *2. Furthermore, not only is the assessment of damages within the province of the jury, but the mere size of the jury award alone is not

sufficient to prove passion and prejudice. *Elwer v. Carrol's Corp.*, 3d Dist. No. 1–06–33, 2006-Ohio-6085, 2006 WL 3350784, ¶ 14; *Cook*, 3d Dist. No. 17–90–16, 1991 WL 229250, at *2, citing *Pearson v. Cleveland Acceptance Corp.* (1969), 17 Ohio App.2d 239, 245, 46 O.O.2d 411, 246 N.E.2d 602.

{¶ 19} Kingsley has failed to point to anything specific that would lead us to conclude that it was likely that the jury was impassioned or prejudiced. Furthermore, we cannot find anything in the record that could be construed as having caused such a disproportionate result that would "shock reasonable sensibilities." While the jury award was generous, that alone is insufficient for this court to conclude that the jury was impassioned or prejudiced.

{¶ 20} Kingsley's second assignment of error is, therefore, overruled.

### KINGSLEY'S ASSIGNMENT OF ERROR NO. I

The trial court erred when it failed to reduce future damages, including damages for future pain and suffering, to present value.

{¶ 21} In her first assignment of error, Kingsley argues that future damages must be reduced to present value. Otherwise, such damages amount to an excessive award. She further argues that the trial court's failure to reduce future damages to present value was plain error.

{¶ 22} Kingsley's argument was first raised during her posttrial motion. In general, under Civ.R. 51(A), a party "may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict." In addition, a party cannot bypass the timing requirement of Civ.R. 51(A) by objecting to the instructions in a motion for a new trial. *Klein v. Bros. Masonry, Inc.*, 6th Dist. No. L–02–1080, 2003-Ohio-3098, 2003 WL 21385272, ¶ 57, fn. 4. As a result, if the party fails to object to the instructions given before the jury retires to consider its verdict, the party, in effect, waives the alleged error on appeal. *Munn v. Rudy Stapleton & Son*, 6th Dist. No. F–02–030, 2003-Ohio-5606, 2003 WL 22390109, ¶ 27.

{¶ 23} Because Kingsley failed to make a timely objection to the jury instructions before the jury retired, we find that she waived this error for purposes of appeal. However, Kingsley argues that this court should apply the exception to Civ.R. 51(A) and remand the case to the trial court for a new trial.

{¶ 24} The only exception to a party's failure to make a timely objection to jury instructions is the plain-error rule. *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 288, 61 O.O.2d 504, 291 N.E.2d 739. This rule is a judicially created exception to Civ.R. 51(A) and it allows for a "review of alleged errors not properly objected to in the trial court, where the errors are so

fundamental and serious so as to affect 'the basic fairness, integrity, or public reputation of the judicial process.' " *Gonzalez v. Henceroth Ents., Inc.* (1999), 135 Ohio App.3d 646, 650, 735 N.E.2d 68, quoting *Yungwirth,* 32 Ohio St.2d at 288, 61 O.O.2d 504, 291 N.E.2d 739. However, plain error is recognized " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain-error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

{¶ 25} Kingsley argues that this is an exceptional case because the jury award of $350,000 was clearly excessive and failure to reduce the award would amount to "a manifest miscarriage of justice." In support of her position, Kingsley relies primarily on two cases: *Rodgers v. Fisher Body Div., Gen. Motors Corp.* (C.A.6, 1984), 739 F.2d 1102, and *Eagle Am. Ins. Co. v. Frencho* (1996), 111 Ohio App.3d 213, 675 N.E.2d 1312.

{¶ 26} As an initial matter, we acknowledge that, as a general rule, jury verdicts that award future damages should reflect the present value of those future damages. See *Chesapeake & Ohio Ry. Co. v. Kelly* (1916), 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 644 N.E.2d 298. However, for the reasons stated below, we do not agree with Kingsley that a trial court's failure to reduce a jury award to present value amounted to plain error in this case.

{¶ 27} In *Frencho,* the trial court granted the defendant's motion for a new trial because (1) the court's failure to instruct the jury on the reduction of future damages to present value amounted to plain error and (2) certain portions of the plaintiff's attorney's closing arguments likely prejudiced and impassioned the jury. On appeal, the Tenth District Court of Appeals affirmed the trial court's decision to grant a new trial and held "that the trial court's failure to instruct the jury on future damages was incorrect as a matter of law. Therefore, the plain error doctrine does apply in the present case, and the trial court did not abuse its discretion in ordering a new trial." 111 Ohio App.3d at 219, 675 N.E.2d 1312.

{¶ 28} In *Rodgers,* neither of the parties proposed a jury instruction that included a statement requiring the jury to reduce any future damages to their present value, nor did any of the parties object before the jury retired to consider

their verdict. Even on appeal to the Sixth Circuit, the defendant failed to raise the lack of an instruction on present value in its appeal. Nevertheless, the Sixth Circuit, sua sponte, found that failure to instruct the jury to discount its award of future damages amounted to an "obvious" error. 739 F.2d at 1106.

{¶ 29} While application of those holdings to this case suggests that the trial court's failure to reduce the future damages to present value amounted to plain error, we decline to follow those opinions for the following reasons.

{¶ 30} First of all, we find it dispositive that subsequent to both the *Frencho* and *Rodgers* decisions, both of the respective courts dealt with the issue again and came to an opposite conclusion. The Tenth District considered the present value issue again in *Mayhugh v. Grimm* (Mar. 20, 1997), 10th Dist. No. 96APE07–857, 1997 WL 128920, and *Miller v. Lindsay–Green, Inc.,* 10th Dist. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 97. In *Mayhugh,* the court acknowledged that failure to give an instruction on present value amounted to error (its holding in *Frencho* ), but found that the parties had failed to raise the issue below or present any evidence as to present value. Id. at *9. Thus, the court held that the error did not rise to the level of plain error, and the issue was waived. Id. at *9.

{¶ 31} Similarly, in *Miller,* the court was faced with the same issue again and decided to follow its holding in *Mayhugh* for three reasons: (1) the holding in *Mayhugh* was the most recent and thus the deciding precedent, (2) the court stated that it was not convinced that it had applied the correct legal standard in *Frencho,* and (3) the jury award in *Miller* was not grossly excessive and was supported by the weight of the evidence. Id. at ¶ 101–102.[1]

{¶ 32} Similarly, the federal case cited by Kingsley has also been criticized by the same circuit court in a subsequent decision in *Kokesh v. Am. Steamship Co.* (C.A.6, 1984), 747 F.2d 1092. In *Kokesh,* the Sixth Circuit acknowledged its holding in *Rodgers,* but declined to apply its principle in the present case, stating that "[w]e are confident that the *Rodgers* court did not intend to pronounce an invariable rule of general application." 747 F.2d at 1095–1096. Instead, given the circumstances in most federal cases, the court recognized that defense counsel may tactically choose not to present "a very particularized instruction on the calculation of damages." Id. at 1096. The court went on to hold:

We agree with the trial judge that while the award of damages here may have been generous, it was supported by sufficient proof in the case, and was not

---

1. While we do not agree with McNeil's argument that the Tenth District explicitly overturned its decision in *Frencho* with its decision in *Miller,* we do find it significant that the court had the same issue presented to it twice and chose to narrow the scope of its holding in *Frencho* by declining to apply it to either case.

shockingly large. We see no reason to question the jury instructions solely because they did not include a charge on reducing future damages to present worth, an instruction which neither party requested or evidently desired. Th[e] lawsuit was vigorously tried by both parties in the district court. The jury verdict which resulted was no doubt larger than had been anticipated by the defense, but no error, plain or otherwise, produced it. Although the defense may harbor the lingering hope that some other defense might have produced a different result, we doubt it. The tactical and strategical decisions made by the defense seem to have been as sensible as any others which might have been made at the time. That a different strategy might possibly have produced a different result does not provide any basis for reversal.

Id., 747 F.2d at 1096. Thus, there is an obvious retreat from the position that a trial court's failure to reduce an award of future damages to present value amounts to plain error. One case has held while it may be error not to instruct the jury to reduce future damages to present value, it was not an error that rose to the level of plain error. The other case found that under those facts, no error at all resulted from the lack of jury instructions as to present value.

{¶ 33} Moreover, we do not find the United States Supreme Court case and Ohio Supreme Court cases cited by Kingsley to be helpful in determining the outcome of this issue. In *Chesapeake & Ohio Ry. Co.*, the United States Supreme Court held that "as a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award." 241 U.S. at 490, 36 S.Ct. 630, 60 L.Ed. 1117. However, as to how the lower courts should deal with this present value issue, the court notably declined to lay down a precise rule or formula. Id. at 491, 493, 36 S.Ct. 630, 60 L.Ed. 1117. So, while it appears that the United States Supreme Court laid down a general principle, it left it up to the lower courts to decide how to apply this principle.

{¶ 34} In addition, the Ohio Supreme Court has only stated the general principle in the two cases cited by Kingsley without further elaboration as to how lower courts should deal with any deviations from this principle. In *Maus v. New York, Chicago & St. Louis RR. Co.* (1956), 165 Ohio St. 281, 285, 59 O.O. 366, 135 N.E.2d 253, the Ohio Supreme Court simply approved the trial court's instruction to the jury and confirmed that it had stated the correct law in regards to reducing future damages to present value. Similarly, in *Galayda v. Lake Hosp. Sys., Inc.*, 71 Ohio St.3d 421, 644 N.E.2d 298, the Ohio Supreme Court found that because of the principle that future damages should be reduced to present value, a statute that allowed a defendant to make periodic lump-sum payments to the plaintiff over time was unconstitutional. Nevertheless, even

with the general principle stated, in neither one of those cases did the Ohio Supreme Court deal with the issue of failing to instruct a jury in discounting future damage awards to present value, nor did the court make it the trial court's duty to reduce the future damages to present value in absence of such instructions.

{¶ 35} Furthermore, even if it was erroneous to fail to instruct the jury as to present value, we are not convinced, under the facts of this case, that the outcome would have been different but for the trial court's error. It is the trial court's duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by evidence. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583. Here, there was no evidence presented that would have helped the jury in determining the damages' present value. In fact, during closing arguments, defense counsel's position was that the jury should only award damages based on the medical bills and the pain and suffering related to McNeil's neck (which had gotten better), and not the herniated disk in her lower back (the source of McNeil's future-damages claim). Thus, even if the trial court had instructed the jury that it must discount any future damages to their present value, there was no evidence presented which would have helped the jury in discounting future damages to present value.

{¶ 36} While the award in this case was generous, we cannot say, under the facts of this case, that the failure to instruct the jury as to present value was plain error, because we do not believe that the result would have been different but for the absence of the instructions.

{¶ 37} Kingsley's first assignment of error is, therefore, overruled.

### KINGSLEY'S ASSIGNMENT OF ERROR NO. III

The trial court erred when it denied appellant's motion for remittitur and/or a new trial.

### KINGSLEY'S ASSIGNMENT OF ERROR NO. IV

The trial court erred when it denied appellant's motion for judgment notwithstanding the verdict.

{¶ 38} The essence of Kingsley's third and fourth assignments of error is that because the trial court wrongfully failed to reduce the future damages to present value, it also erred when it denied Kingsley's motions for remittitur and/or new trial and the motion for judgment notwithstanding the verdict. In her brief, Kingsley argues that the trial court erred under Civ.R. 59 and 50(B). However, as we stated above, we found that the trial court's failure to instruct the jury as to present value was not plain error in this case. As to the trial

court's failure to reduce the future damages after the verdict was announced and its denial of Kingsley's posttrial motions, this court cannot render a decision because this court was not provided with a complete record.

{¶ 39} Both parties made posttrial motions, and the trial court conducted a hearing on all of the motions on February 13, 2008. While the judgment entries reflect the trial court's ultimate rulings on the motions, the judgment entries also reflect that the trial court made its findings on the record at the time of the hearing. In order to determine whether the trial court erred in its decision to deny Kingsley's posttrial motions, this court needs to know the trial court's reasons for making its ruling. However, neither party provided this court with the transcript from the post-trial motion hearing that took place on February 13, 2008. Pursuant to App.R. 9(B) and Loc.R. 5(A), the appellant is responsible for obtaining and timely delivering to the clerk of the trial court a complete transcript of the proceedings. Without the posttrial transcript, we must presume regularity occurred during those proceedings, and the trial court acted properly in denying Kingsley's posttrial motions. *Lawless v. Kinsey* (Sept. 8, 1997), 3d Dist. No. 6–97–11, 1997 WL 563293, at *2, citing *Chaney v. East* (1994), 97 Ohio App.3d 431, 435, 646 N.E.2d 1138.

{¶ 40} Kingsley's third and fourth assignments of error are, therefore, overruled.

{¶ 41} McNeil filed a cross-appeal with this court raising one assignment of error, which we will address below.

## McNEIL'S ASSIGNMENT OF ERROR NO. I

The trial court erred in its calculation of pre-judgment interest by ruling that this action was not "pending" as of June 2, 2004.

{¶ 42} In McNeil's assignment of error, she argues that the trial court incorrectly calculated her prejudgment interest by finding that her action was not "pending" as of the change in the pre-judgment interest statute, and thus applied the wrong interest rate and starting time to calculate the interest.

{¶ 43} Kingsley responds by arguing first that the trial court erred in finding that Kingsley failed to make a good faith effort to settle the case, thereby awarding McNeil prejudgment interest; and second, that even if it did properly find Kingsley failed to make a good effort to settle, then it did correctly calculate the prejudgment interest rate.[2]

---

**2.** Kingsley also suggests in her reply brief that McNeil's cross-appeal may not have been timely filed. However, according to the official docket, even though the trial court made its rulings regarding the parties' posttrial motions on February 15, 2008, service of the notice of appealable order was not filed until March 19, 2008. Under Civ.R. 58(B) within three days

{¶ 44} McNeil's accident occurred on December 4, 2002. At that time, the prejudgment interest statute, R.C. 1343.03, prescribed the interest rate on judgment to be ten percent. R.C. 1343.03(A), eff. July 6, 2001. In addition, if the trial court found that the nonmoving party had failed to make good efforts to settle the case, then the interest would commence from the time the moving party's cause of action accrued. R.C. 1343.03(C), eff. July 6, 2001. However, in 2004, the Ohio legislature amended the prejudgment interest statute with House Bill 212 ("H.B. 212"). Under the statute's amended version the interest rate is whatever is defined under R.C. 5703.47 (or a variable interest rate), instead of the definitive ten percent rate as prescribed under the old statute. Compare R.C. 1343.03(A), eff. June 2, 2004; R.C. 1343.03(A), eff. July 6, 2001. Moreover, the starting time to calculate the prejudgment interest also changed depending on the particular circumstances of the case. Compare R.C. 1343.03(C), eff. June 2, 2004; R.C. 1343.03(C), eff. July 6, 2001. This amended version was to be effective on June 2, 2004; however, the Ohio legislature provided in H.B. 212 the following section pertaining to the effective date:

SECTION 3. The interest rate provided for in division (A) of section 1343.03 of the Revised Code, as amended by this act, applies to actions pending on the effective date of this act. In the calculation of interest due under section 1343.03 of the Revised Code, in actions pending on the effective date of this act, the interest rate provided for in section 1343.03 of the Revised Code prior to the amendment of that section by this act shall apply up to the effective date of this act, and the interest rate provided for in section 1343.03 of the Revised Code as amended by this act shall apply on and after that effective date.

{¶ 45} According to McNeil, because she did not file her complaint until December 3, 2004, the trial court only applied the amended version of R.C. 1343.03, and thus the lower variable interest rate, rather than the definitive ten percent rate. McNeil argues that the trial court should have applied the ten percent rate because under the Ohio Supreme Court case *Van Fossen v. Babcock*

after the judgment has been entered in the journal the clerk shall serve the parties and note service in the appearance docket. Service is only complete upon serving the notice and notation of the service in the appearance docket. Id. Failure of the clerk to serve the parties within the three days does not affect the validity of the judgment or the running of the time for appeal except as provided in App.R. 4(A). Id. App.R. 4(A) requires parties to file the notice of appeal "within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in [Civ.R.] 58(B)." In addition, under App.R. 4(B) cross-appeals may be filed as prescribed by this rule or within ten days of the filing of the first notice of appeal. Here, McNeil timely filed her cross-appeal on March 21, 2008, which was within the 30–day extension because of the clerk's failure to note service within the three days under Civ.R. 58(B).

& *Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489,[3] her case was "pending" as of June 2, 2004.

{¶ 46} In *Van Fossen*, the issue was determining whether the changes in a statutory provision applied retrospectively to cases that were awaiting decisions in the courts of appeals on the effective date of the statute's changes. Id. at 103, 522 N.E.2d 489. The new statute at issue in *Van Fossen* had similar retrospective language to H.B. 212 in this case in that the changes were to apply to cases "pending in any court" at the time of the effective date. Id. The court looked to the definition of "pending" as stated in Black's Law Dictionary,[4] and held that a case remains "pending in any court" until the court of appeals renders its final judgment. Id. at 104, 522 N.E.2d 489.

{¶ 47} McNeil argues that her case was "pending" as of June 2, 2004, because her case had certainly "begun" on the date of the crash as it was "in the process of settlement or adjustment." However, we find McNeil's argument lacks merit.

{¶ 48} First of all, the court in *Van Fossen* was determining what the word "pending" meant in the context of cases already filed and decided in lower courts, yet awaiting decisions from a court of appeals. 36 Ohio St.3d at 103, 522 N.E.2d 489. Because there were already final decisions rendered by trial courts, for purposes of determining whether to apply amended provisions of statutes to those appealed final decisions, the word "pending" needed to be defined. McNeil's case presents a different issue because the application of the word "pending" is not what is important, rather it is the definition of "action" that we find dispositive in this case.

{¶ 49} Section 3 of H.B. 212 specifically states that "[t]he interest rate provided for in division (A) of section 1343.03 of the Revised Code, as amended by this act, applies to *actions pending* on the effective date of this act." (Emphasis added.) An "action" is defined as "[a] civil or criminal judicial proceeding," whereas a "cause of action" is defined as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." Black's Law Dictionary (8th Ed. 2004) 31, 235. Here, the accident occurred on December 4, 2002, which would have given McNeil a cause of action as of that date; however, McNeil did not have an "action" until she filed her complaint on December 3, 2004, which was when she

---

3. This case has been superseded on other grounds by R.C. 2745.01.

4. "Pending" was defined as " '[b]egun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is "pending" from its inception until the rendition of final judgment.' " *Van Fossen*, 36 Ohio St.3d at 103, 522 N.E.2d 489, quoting Black's Law Dictionary (5th Ed. 1979).

officially had a "civil judicial proceeding." Because H.B. 212 Section 3 specifically states that the change in interest rate only applies to "actions pending as of the effective date" of the act, and McNeil did not have an action until after the effective date, the prior version of R.C. 1343.03 is not applicable. Consequently, when McNeil filed her complaint on December 3, 2004, she was under the amended provisions of R.C. 1343.03, and thus could not take advantage of the previous interest rate or measurements of time.

{¶ 50} Similarly, the Court of Appeals for the Ninth District held that the new variable interest rate applied, even though the money payable to the plaintiff had accrued prior to the effective date of H.B. 212, because the plaintiff had not filed the complaint until after June 2, 2004. *Jones v. Progressive Preferred Ins. Co.,* 169 Ohio App.3d 291, 2006-Ohio-5420, 862 N.E.2d 850, ¶ 20–22. Because the complaint was not filed until after the effective date of the H.B. 212, the plaintiff was confined to the new variable interest rate. Id.

{¶ 51} Furthermore, we do not find the cases cited by McNeil, which applied the old version of R.C. 1343.03, dispositive because in each of those cases the complaint had been filed prior to the effective date of H.B. 212. *Scibelli v. Pannunzio,* 7th Dist. No. 05 MA 150, 2006-Ohio-5652, 2006 WL 3059876 (plaintiff filed complaint somewhere between April 20, 1999 [date of last x-ray] and April 29, 2002 [date of jury trial] ); *Conway v. Dravenstott,* 3d Dist. No. 3–07–05, 2007-Ohio-4933, 2007 WL 2757469 (plaintiff filed complaint November 5, 2003); *Hodesh v. Korelitz,* 1st Dist. Nos. C–061013, C–061040, C–070168, and C–070172, 2008-Ohio-2052, 2008 WL 1913530, ¶ 13, 61–63 (plaintiff filed medical-malpractice suit in January 2002).

{¶ 52} In conclusion, because McNeil did not file her complaint until after the effective date of the amended statute, the amended version of R.C. 1343.03 applied, rather than the prior version. We presume from reading McNeil's brief that the trial court applied the new variable interest rate prescribed under the amended version of R.C. 1343.03. However, as stated above, we have not been provided with a transcript from the posttrial motion hearing that took place on February 13, 2008. During that hearing, the trial court made its findings on the record as per the prejudgment interest calculation. Pursuant to App.R. 9(B) and Loc.R. 5(A), the appellant is responsible for obtaining and timely delivering to the Clerk of the trial court a complete transcript of the proceedings. Without the posttrial transcript, we must presume regularity occurred during those proceedings and the trial court acted properly in calculating the prejudgment interest. *Lawless,* 3d Dist. No. 6–97–11, 1997 WL 563293, at *2, citing *Chaney v. East* (1994), 97 Ohio App.3d 431, 435, 646 N.E.2d 1138.

{¶ 53} Accordingly, with respect to Kingsley's argument that prejudgment interest should not have been awarded at all, because the trial court also made its findings with respect to this issue on the record, we must presume regularity occurred and that the trial court acted properly in awarding McNeil prejudgment interest. Id.

{¶ 54} McNeil's assignment of error is, therefore, overruled.

{¶ 55} Having found no error prejudicial to the appellant or cross-appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and ROGERS, J., concur.